1

**PERKINS COIE LLP**
Bobbie J. Wilson, Cal. Bar No. 148317

2
*BWilson@perkinscoie.com*
Sunita Bali, Cal. Bar No. 274108

3
*SBali@perkinscoie.com*
Mara Boundy, Cal. Bar No. 287109

4
*MBoundy@perkinscoie.com*
505 Howard Street, Suite 1000

5
San Francisco, CA  94105
Telephone: 415.344.7000

6
Facsimile:  415.344.7050

7
Susan D. Fahringer, Cal. Bar No. 162978
*SFahringer@perkinscoie.com*

8
Lauren J. Tsuji, Cal. Bar No. 300155
*LTsuji@perkinscoie.com*

9
1201 Third Avenue, Suite 4900
Seattle, WA 98101

10
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

11

12
Attorneys for Defendant
GOOGLE LLC

13

14
UNITED STATES DISTRICT COURT

15
NORTHERN DISTRICT OF CALIFORNIA

16
SAN JOSE DIVISION

17

18
STEVEN VANCE and TIM JANECYK,
for themselves and others similarly

19
situated,

20
Plaintiff,

21
v.

22
GOOGLE LLC, a Delaware limited
liability company,

23
Defendant.

24

25

26

27

28

Case No. 5:20-cv-04696-BLF

**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**

Date:      February 18, 2021
Time:      9:00 a.m.
Location: Courtroom 3 - 5th Floor
Judge:     Hon. Beth Labson Freeman

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ........................................................................................................ 1

INTRODUCTION .............................................................................................................. 2

STATEMENT OF ISSUE TO BE DECIDED ................................................................... 3

REQUEST FOR JUDICIAL NOTICE .............................................................................. 3

BACKGROUND ............................................................................................................... 4

    A.    The Biometric Information Privacy Act ............................................... 4

    B.    Summary of Plaintiffs' Allegations ...................................................... 5

ARGUMENT ..................................................................................................................... 7

    I.    Plaintiffs Fail to State a Claim Under BIPA ............................................. 7

        A.    Plaintiffs' BIPA claims should be dismissed because they attempt to apply BIPA extraterritorially. ..................................... 7

        B.    If BIPA is interpreted to apply to the facts alleged by Plaintiffs, it would violate the dormant Commerce Clause. ................................ 10

        C.    BIPA does not apply to information derived from photographs. ............. 13

        D.    Plaintiffs have not alleged facts showing that Google did more than "possess" their Biometric Data, and thus have not stated a claim under Section 15(b). ....................................................... 17

        E.    Plaintiffs fail to allege facts showing that Google profited from their Biometric Data in violation of Section 15(c). ............................ 20

    II.    Plaintiffs' Unjust Enrichment Claim Is Duplicative of Their BIPA Claim and Should Be Dismissed for the Same Reasons ................................. 22

    III.    Plaintiffs' Injunctive Relief Claim Should Be Dismissed Because It Is a Remedy, Not a Cause of Action ............................................................ 22

CONCLUSION ................................................................................................................ 23

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*American Booksellers Foundation v. Dean,*
  342 F.3d 96 (2d Cir. 2003) ...................................................................................13

5

6

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...........................................................................................21

7

*Avery v. State Farm Mut. Auto. Ins. Co.,*
  835 N.E.2d 801 (Ill. 2005) ......................................................................... *passim*

8

9

*Balistreri v. Pacifica Police Dep't,*
  901 F.2d 696 (9th Cir. 1988) ...............................................................................17

10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...........................................................................................21

11

12

*Bernal v. ADP, LLC,*
  No. 2017-CH-12364, 2019 WL 5028609 (Ill. Cir. Ct. Aug. 23, 2019) .......................17, 19, 20

13

14

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.,*
  476 U.S. 573 (1986) ...........................................................................................12

15

16

*Chisom v. Roemer,*
  501 U.S. 380 (1991) ...........................................................................................16

17

*Cleary v. Philip Morris Inc.,*
  656 F.3d 511 (7th Cir. 2011) ...............................................................................22

18

19

*Dana Tank Container, Inc. v. Hum. Rts. Comm'n,*
  687 N.E. 2d 102 (Ill. App. 1997) .........................................................................18

20

21

*Figueroa v. Kronos Inc.,*
  No. 19 C 1306, 2020 WL 1848206 (N.D. Ill. Apr. 13, 2020) ....................................18

22

*Franklin v. Gwinnett Cnty. Pub. Schs.,*
  503 U.S. 60 (1992) .............................................................................................22

23

24

*Frisby v. Schultz,*
  487 U.S. 474 (1988) ...........................................................................................13

25

*Guinn v. Hoskins Chevrolet,*
  836 N.E.2d 681 (Ill. App. 2005) ..........................................................................22

26

27

*Hart v. Massanari,*
  266 F.3d 1155 (9th Cir. 2001) .............................................................................16

28

-ii-

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Healy v. Beer Inst.*,
491 U.S. 324 (1989) ...............................................................................10, 11

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) ......................................................17, 18, 19

*In re Facebook Biometric Information Privacy Litigation*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .........................................................15, 16

*In re Google Assistant Privacy Litig.*,
No. 19-CV-04286-BLF, 2020 WL 2219022 (N.D. Cal. May 6, 2020) ....................................4

*Innovative Modular Sols. v. Hazel Crest Sch. Dist. 152.5*,
965 N.E.2d 414 (Ill. 2012) ............................................................................15

*Kraft, Inc. v. Edgar*,
561 N.E.2d 656 (Ill. 1990) ............................................................................17

*Laborer's Int'l Union of N. Am., Local 1280 v. State Lab. Rels. Bd.*,
507 N.E.2d 1200 (Ill. App. Ct. 1987) ................................................................16

*Landau v. CNA Fin. Corp.*,
886 N.E.2d 405 (Ill. App. 2008) ......................................................................8

*Monroy v. Shutterfly, Inc.*,
No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017)........................................7, 9

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. 2019) ................................................................17

*Nat'l Fed'n of the Blind v. Target Corp.*,
452 F. Supp. 2d 946 (N.D. Cal. 2006) ...............................................................13

*Neals v. PAR Tech. Corp.*,
419 F. Supp. 3d 1088 (N.D. Ill. 2019) ................................................................9

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019)..........................................................................8

*People v. Diggins*,
919 N.E.2d 327 (Ill. 2009) ............................................................................14

*Pooh-Bah Enters., Inc. v. Cnty. of Cook*,
905 N.E.2d 781 (Ill. 2009) ............................................................................20

-iii-

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ............................................................. *passim*

*Rosenbach v. Six Flags Ent. Corp.*,
    129 N.E.3d 1197 (Ill. 2019) .................................................................18, 19, 20

*Sadat v. Am. Motors Corp.*,
    470 N.E.2d 997 (Ill. 1984) ...............................................................................23

*Sam Francis Foundation v. Christies, Inc.*,
    784 F.3d 1320 (9th Cir. 2015) (en banc) *cert. denied,* 136 S. Ct. 795 (2016) .........................12

*TelTech Sys., Inc. v. McCollum*,
    No. 08-61664-CIV, 2009 WL 10626585 (S.D. Fla. July 16, 2009)........................12

*United States v. Black*,
    482 F.3d 1035 (9th Cir. 2007) .............................................................................4

*Vance v. IBM*,
    No. 20 C 577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020)............................10, 16

*Walker v. S.W.I.F.T. SCRL*,
    491 F. Supp. 2d 781 (N.D. Ill. 2007) ...................................................................8

**STATUTES**

740 ILCS 14/1, *et seq.*................................................................................. *passim*

740 ILCS 14/5(a) .................................................................................4, 15, 21

740 ILCS 14/5(b) ...................................................................................... *passim*

740 ILCS 14/10..........................................................................................13, 14

740 ILCS 14/15(c) ...........................................................................................20

Cal. Civ. Code § 1798.100 *et seq.*....................................................................12

**RULES**

Fed. R. Evid. 201(b)...........................................................................................4

**OTHER AUTHORITIES**

Black's Law Dictionary (11th ed. 2019)............................................................19

H.R. Tr. 95th Gen. Assemb., Reg. Sess. No. 276 (Ill. May 30, 2008)..............7

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

S.B. 2400, 95th Gen. Assemb., Reg. Sess., § 10, S. Floor Amend. No. 4
   (Ill. Apr. 11, 2008) .................................................................................................................14

S.B. 2400, 95th Gen. Assemb., Reg. Sess., § 10 (Ill. Feb. 14, 2008) ...........................................14

1    **NOTICE OF MOTION AND MOTION**

2    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3        PLEASE TAKE NOTICE that on February 18, 2021 at 9:00 a.m. or as soon thereafter as

4    this Motion may be heard in the above-entitled court, located at 280 South First Street, San Jose,

5    California, in Courtroom 3 - 5th Floor, defendant Google LLC ("Google"), by and through their

6    counsel of record, will and hereby do, move the Court for an order dismissing Plaintiffs' Class

7    Action Complaint, Dkt. 1, with prejudice for failure to state a claim under Federal Rule of Civil

8    Procedure 12(b)(6).

9        This Motion is based on this Notice of Motion and Motion, the Memorandum of Points

10   and Authorities herein, the Declaration of Sunita Bali in Support of Defendant Google LLC's

11   Motion to Dismiss Class Action Complaint and Motion to Stay Case, the pleadings and papers on

12   file in this action and all related cases, any argument and evidence to be presented at the hearing

13   on this Motion, and any other matters that may properly come before the Court.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2

Plaintiffs seek to recover significant statutory damages from Google under the Illinois

3

Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA") based on nothing more than

4

Google's alleged receipt of the Diversity in Faces Dataset ("DiF Dataset") created by IBM that

5

allegedly contained Plaintiffs' Biometric Data[1], and Google's alleged research use of that dataset

6

to improve its facial recognition technology. This is not the only case that Plaintiffs have filed

7

based on this theory: Plaintiffs first sued IBM for creating the dataset and disclosing it to third

8

parties. Then they sued Google, Microsoft, and Amazon for their alleged receipt and use of the

9

dataset. Google's alleged conduct is not the conduct that BIPA was enacted to regulate, and

10

Plaintiffs should not be permitted to manufacture a BIPA claim against Google where none exists.

11

First, BIPA is an Illinois statute and thus only applies to conduct occurring "primarily and

12

substantially" in Illinois. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853-54 (Ill.

13

2005). Plaintiffs' claims against Google are not based on any conduct that occurred in Illinois—

14

Plaintiffs do not allege that the dataset was created in Illinois, shared in Illinois, or used in

15

Illinois. Plaintiffs' only bases for invoking BIPA are that Plaintiffs reside in Illinois and uploaded

16

photos to *Flickr* (not to Google) from devices in Illinois. But this does not come close to pleading

17

the facts necessary to show that BIPA applies to Google's alleged conduct.

18

Second, if BIPA were applied to the facts alleged here, it would also violate the dormant

19

Commerce Clause. Again, Plaintiffs do not allege any conduct by Google in Illinois, thus

20

applying BIPA here would amount to the regulation of conduct occurring wholly outside Illinois.

21

Third, the alleged Biometric Data on which Plaintiffs' claims are based was derived from

22

photographs, but BIPA's text, structure, and purpose make clear that BIPA does not apply to

23

photographs or information derived from photographs. Plaintiffs' BIPA claims should be

24

dismissed for this reason as well.

25

---

26

[1] For convenience, Google uses the term "Biometric Data" in this Motion to refer to both

27

"biometric identifiers" and "biometric information" as those terms are defined in BIPA.

28

1    In addition, Plaintiffs' claims are for violations of BIPA Sections 15(b) and (c), but they

2    fail to state a claim under either subsection. Section 15(b) requires advance notice and consent

3    before a private entity may collect a person's Biometric Data. But Plaintiffs do not allege that

4    Google collected their Biometric Data within the meaning of Section 15(b); they allege that IBM

5    collected their Biometric Data from photos uploaded to Flickr, and that IBM disclosed it to

6    Google. Section 15(b) cannot be interpreted to require a company that played no role in the

7    collection of Biometric Data, and had no interaction with the data subject at all, to provide

8    advance notice and obtain consent before receiving such data. Plaintiffs' claims for violations of

9    Section 15(b) should be dismissed.

10    Plaintiffs' claims for violation of Section 15(c) should be dismissed because they are

11    woefully conclusory. Section 15(c) prohibits a company from "profiting" from Biometric Data.

12    Yet Plaintiffs do not allege any facts showing that the dataset allegedly created by IBM and

13    containing their Biometric Data actually improved Google's facial recognition technology, much

14    less that any such improvement resulted in increased profits to Google.

15    Finally, Plaintiffs' unjust enrichment claim is duplicative, and their claim for injunctive

16    relief fails because injunctive relief is a remedy and not an independent cause of action.

17    All of Plaintiffs' claims against Google should be dismissed with prejudice.

## STATEMENT OF ISSUE TO BE DECIDED

19    Have Plaintiffs stated a claim under BIPA, or for unjust enrichment or injunctive relief,

20    based on Google's alleged receipt of the DiF Dataset from IBM or its alleged research use of the

21    DiF Dataset?

## REQUEST FOR JUDICIAL NOTICE

23    Google requests that, in deciding this Motion, the Court consider Exhibits A, C, and D to

24    the Declaration of Sunita Bali in Support of Defendants' Motion to Dismiss and Motion to Stay

25    Class Action Complaint ("Bali Decl."), filed concurrently. Exhibits A, C, and D are the operative

26    complaints filed by Plaintiffs in their lawsuits against IBM, Amazon, and Microsoft, respectively,

27    alleging BIPA violations in connection with the DiF Dataset. In considering a motion to dismiss,

28

-3-

1    courts can look to matters of which the court may take judicial notice. *See, e.g.*, *In re Google*

2    *Assistant Privacy Litig.*, No. 19-CV-04286-BLF, 2020 WL 2219022, at *4-5 (N.D. Cal. May 6,

3    2020). Public records, including court documents, are proper subjects of judicial notice because

4    they are "not subject to reasonable dispute." Fed. R. Evid. 201(b); *United States v. Black*, 482

5    F.3d 1035, 1041 (9th Cir. 2007). Because Exhibits A, C, and D are all public court documents,

6    they can be judicially noticed and considered by the Court in deciding this Motion.

7    **BACKGROUND**

8        **A.**    **The Biometric Information Privacy Act**

9          In 2008, the Illinois General Assembly enacted BIPA in response to the growing use of

10   biometric technology in "financial transactions and security screenings" in Illinois. 740 ILCS

11   14/5(a). BIPA is meant to facilitate the responsible development and use of biometric technology.

12   *See, e.g.*, *id*. § 5(a), (b), (d), (e). To that end, BIPA imposes certain requirements for the

13   "collection, use, safeguarding, handling, storage, retention, and destruction of biometric

14   identifiers and information." *Id*. § 5(g). BIPA defines "biometric identifier" to mean "a retina or

15   iris scan, fingerprint, voiceprint, or scan of hand or face geometry" and defines "biometric

16   information" to mean "any information, regardless of how it is captured, converted, stored, or

17   shared, based on an individual's biometric identifier used to identify an individual." *Id*. § 10.

18         As relevant here, Section 15(b) of BIPA provides that a private entity may not "collect,

19   capture, purchase, receive through trade, or otherwise obtain" (hereinafter, "Collect") Biometric

20   Data unless it first obtains a "written release" from the subject or the subject's "legally authorized

21   representative." *Id*. § 15(b). Section 15(c) of BIPA also states that a "private entity in possession

22   of" Biometric Data may not "sell, lease, trade, or otherwise profit from a person's" Biometric

23   Data. *Id*. § 15(c).

24         BIPA's penalties are harsh. "Any person aggrieved" by a violation of the statute may sue

25   for actual damages or liquidated damages of $1,000 per violation (for negligent violations) or

26   $5,000 per violation (for "intentional[]" or "reckless[]" violations). *Id*. § 20(1), (2). BIPA also

27   provides that prevailing parties may recover "reasonable attorneys' fees and costs, including

28

-4-

expert witness fees and other litigation expenses." *Id*. § 20(3). The potential for enormous statutory damages has inspired a wave of putative class actions in recent years, with over six-hundred lawsuits filed in the last five years alone.

### B.     Summary of Plaintiffs' Allegations

Plaintiffs allege that Google obtained a dataset from IBM called the DiF Dataset. Class Action Complaint ("Compl."), Dkt. 1, ¶ 55. Plaintiffs contend that the DiF Dataset included more than one million images, including publicly-available photographs of Plaintiffs that they uploaded to the photo-sharing website Flickr, as well Biometric Data that IBM "extracted" from those photographs. *Id*. ¶¶ 40, 44, 50, 62, 70. They allege that Google used the DiF Dataset to improve its facial recognition technology, making its products and services that integrate such technology more valuable in the commercial marketplace. *Id*. ¶ 58.

More specifically, Plaintiff Vance alleges that in 2008, he uploaded a photo of himself with two family members (the "2008 Photo") to Flickr as well as numerous other photos. *Id.*, ¶¶ 59-60. Plaintiff Janecyk also alleges that he has been a Flickr user since 2008, uploading "in excess of a thousand" photographs, including a picture of himself that was uploaded in 2011 from his device in Illinois (the "2011 Photo"). *Id.* ¶ 68. In 2014, Flickr, through its parent company Yahoo!, allegedly compiled a dataset of "approximately 100 million Flickr photographs" that included some images of Illinois residents, including Plaintiffs, which it made "publicly available" (the "Flickr Dataset"). *Id.* ¶¶ 29, 32. Flickr allegedly claimed that the purpose of releasing the Flickr Dataset was to help improve the accuracy and reliability of facial recognition technology. *Id.* ¶ 31. In April 2019, IBM allegedly created the DiF Dataset "consisting of one million images culled from the Flickr Dataset." *Id.* ¶ 40. IBM did so in order to "improv[e] the ability of facial recognition systems to fairly and accurately identify all individuals," as research had shown that existing facial recognition technology was less accurate identifying women and individuals with darker skin tones. *Id.* ¶¶ 40, 33-37. Plaintiffs allege that in creating the DiF Dataset, "IBM scanned the facial geometry of each image contained in the dataset" and "created a comprehensive set of annotations of intrinsic facial features." *Id.* ¶ 41 (internal quotations

omitted). Although Plaintiffs do not clearly allege what specific data collected by IBM constitutes biometric identifiers and information under BIPA, they generally contend that "[t]he [DiF] Dataset contained the biometric identifiers and information of Plaintiffs and Class members." *Id.* ¶ 44; *see also id.* ¶ 46. Plaintiffs further contend that IBM never sought nor received consent from Plaintiffs to "perform scans of their facial geometries," or collect, possess, or profit from their Biometric Data. *Id.* ¶ 45.

Plaintiffs claim that IBM offered its DiF Dataset to other companies that developed and used facial recognition technology, and that the information provided to companies "included the biometric identifiers and information extracted from each photograph" as well as "links to each photograph on Flickr." *Id.* ¶¶ 47, 50. Plaintiffs contend that any company that obtained the DiF Dataset could "identify the Flickr user who uploaded the photograph," view the user's homepage, and view each photograph's metadata, including any available geo-tags relating to where the photograph was taken or uploaded. *Id.* ¶ 51.

Plaintiffs allege that Google obtained the DiF Dataset from IBM to improve the accuracy of Google's facial recognition software. *Id.* ¶¶ 55, 57-58. They also allege, on information and belief, that Google "used the links provided by IBM" to obtain Plaintiffs' photographs included in the DiF Dataset in order to associate the Biometric Data provided by IBM with such photographs. *Id.* ¶¶ 55-56. Plaintiffs claim that the DiF Dataset also included information sufficient to identify their Flickr profile pages, which showed that they resided in Illinois, and provided a method to contact them via Flickr's direct message system, which Google did not do. *Id.* ¶¶ 61, 63-65, 69, 71-73.

Plaintiffs claim that Google's facial recognition technology is a "fundamental cornerstone of many of its largest consumer products and services," and that its use of the DiF Dataset improved its products and made them more valuable in the commercial marketplace. *Id.* ¶¶ 53, 58.

Plaintiffs assert two claims under BIPA: (1) violations of BIPA 14/15(b), which requires notice and consent prior to Collecting a person's Biometric Data, and (2) violations of BIPA

-6-

1    14/15(c), which prohibits a private entity from selling, leasing, trading or otherwise profiting

2    from a person's Biometric Data. *Id.* ¶¶ 92-105. They also allege claims for unjust enrichment and

3    injunctive relief. *Id.* ¶¶ 106-121. Plaintiffs purport to bring these claims on behalf of themselves,

4    as well as a putative class of "[a]ll Illinois residents whose faces appear in the [DiF] Dataset

5    obtained by Defendant Google." *Id.* ¶ 82.

6        As discussed in detail in Google's Motion to Stay, filed concurrently, Plaintiffs previously

7    filed a lawsuit against IBM based on its creation of the DiF Dataset and disclosure of the DiF

8    Dataset to third parties. And around the same time they filed this lawsuit against Google,

9    Plaintiffs also filed similar lawsuits against Microsoft and Amazon alleging that they, like

10   Google, obtained and used the DiF Dataset in violation of BIPA. *See* Bali Decl., Exs. A, C, D.

11                                        **ARGUMENT**

12   **I.     Plaintiffs Fail to State a Claim Under BIPA.**

13       **A.     Plaintiffs' BIPA claims should be dismissed because they attempt to apply
                  BIPA extraterritorially.**

14

15       It is a "long-standing rule of construction in Illinois" that "a 'statute is without

16   extraterritorial effect unless a clear intent in this respect appears from the express provisions of

17   the statute.'" *Avery*, 835 N.E.2d at 852-53 (quoting *Dur-Ite Co. v. Indus. Comm'n*, 68 N.E.2d

18   717, 722 (Ill. 1946)). And "there is no sign of that sort of intent from the Illinois legislature" with

19   respect to BIPA. *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017); *see also*

20   *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017)

21   ("[N]one of BIPA's express provisions indicates that the statute was intended to have

22   extraterritorial effect."). Indeed, the express language of BIPA and its legislative history suggests

23   the opposite. *See, e.g.*, 740 ILCS 14/5(b) (explaining that BIPA was enacted in part because the

24   "City of Chicago and other locations *in this State*" had been selected to pilot new applications of

25   biometric-facilitated financial transactions) (emphasis added); *see also* Bali Decl., Ex. E (H.R. Tr.

26   95th Gen. Assemb., Reg. Sess. No. 276, at 249 (Ill. May 30, 2008) (Statement of Rep. Kathleen

27   A. Ryg) (stating that BIPA "will be applicable to private entities doing business in Illinois" and

28

1    that BIPA is intended to protect "the citizens of Illinois").) Thus, to state a claim, Plaintiffs must

2    allege that their "asserted violations of [BIPA] . . . have taken place in Illinois." *Rivera*, 238 F.

3    Supp. 3d at 1100-01.

4          The Illinois Supreme Court has held that a transaction is deemed to have occurred in

5    Illinois when "the circumstances that relate to the disputed transaction occur[red] *primarily and*

6    *substantially*" in the state. *Avery*, 835 N.E.2d at 853-54 (emphasis added); *see also Patel v.*

7    *Facebook, Inc.*, 932 F.3d 1264, 1275-76 (9th Cir. 2019) (applying the *Avery* test to BIPA claims).

8    This means that "the *majority of circumstances* relating to the alleged violation" must have

9    occurred within the state. *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. 2008)

10   (emphasis added).

11         Here, Plaintiffs have not alleged that Google engaged in *any* conduct in Illinois, much less

12   any conduct that amounts to a violation of BIPA. The *only* connections to Illinois alleged in the

13   Complaint are that Plaintiffs Vance and Janecyk are residents of Illinois, and allegedly

14   "uploaded" photos of themselves to Flickr from devices in Illinois, which photos were ultimately

15   included in the DiF Dataset provided to Google. Compl., ¶¶ 6-7, 59, 62, 68, 70.[2] Plaintiffs don't

16   allege that Google Collected Plaintiffs' Biometric Data in Illinois, that Google used Plaintiffs'

17   Biometric Data to improve its facial recognition technology in Illinois, or that Google had any

18   interaction whatsoever with Plaintiffs in Illinois (or elsewhere). Allegations regarding Plaintiffs'

19   state of residency are insufficient to show that the relevant conduct occurred "primarily and

20   substantially" in Illinois. *See, e.g.*, *Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 795 (N.D. Ill.

21   2007) (explaining that the *Avery* test is not satisfied where the complaint alleges only that

22   "plaintiff . . . is a resident of Illinois."). Plaintiffs' allegations that they uploaded photos of

23   themselves from Illinois are also insufficient, because (1) their decision to upload photos to Flickr

24   _____

25   [2] The claims of the putative class are even more attenuated from Illinois, as the putative class

26   consists of "[a]ll Illinois residents whose faces appear in the [DiF Dataset] obtained by Defendant

27   Google," Compl., ¶ 82, *regardless* of whether their photos were taken or uploaded in Illinois.

28

-8-

plainly does not implicate Google, and (2) uploading photos does not violate BIPA. *See Rivera*, 238 F. Supp. 3d at 1100-01 (noting that "violations of [BIPA] must have taken place in Illinois").

As Plaintiffs would have it, a company headquartered in California (Google) can be held liable under an Illinois statute (BIPA) for receiving a dataset from a New York company (IBM) based on photos uploaded to a website hosted by a company with no alleged Illinois connection (Flickr), simply because it happens to include information associated with Illinois residents (Plaintiffs).[3] This clearly extends BIPA too far. *See Avery*, 835 N.E.2d at 854.

To the extent Plaintiffs contend that resolution of the extraterritoriality issue is premature at the motion to dismiss stage, they are incorrect. Dismissal is appropriate on extraterritoriality grounds where Plaintiffs fail to plead the requisite facts. *See, e.g.*, *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1091-92 (N.D. Ill. 2019) (dismissing BIPA claim at the pleading stage because "the Court is unable to reasonably infer from the complaint that [plaintiff's] fingerprint was collected in Illinois"). This case is readily distinguishable from those where courts have treated extraterritoriality as an inherently factual question that is better suited for resolution at a later stage in the case. In those cases, the plaintiffs alleged that they uploaded photos directly *to the defendant's service* from a computer or device located in Illinois and did not receive the requisite notice and consent *from the defendant* at the time of upload. *See, e.g.*, *Rivera*, 238 F. Supp. 3d at 1100 (requiring discovery to resolve extraterritoriality question where plaintiffs alleged that Google Photos scanned photos uploaded to Google's servers from devices in Illinois, and where there were questions regarding Plaintiffs' use of Google Photos); *Monroy*, 2017 WL 4099846, at *6 (requiring discovery where it was unclear "where the actual scan of [plaintiff's] face geometry took place, and where the scan was stored once it was obtained.").

Here, in contrast, Plaintiffs have not alleged that they interacted with Google at all, let alone that they did so in Illinois. Indeed, they do not allege that Google scanned their face

---

[3] *See* Compl., ¶ 8 (alleging that Google is headquartered in California); *see also* Bali Decl., Ex. A at ¶ 4 (alleging that IBM is headquartered in New York).

1   geometry or played any role at all in creating the DiF Dataset. *Cf. Vance v. IBM*, No. 20 C 577,

2   2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020) (requiring discovery to resolve

3   extraterritoriality question where there was uncertainty as to "where IBM performed the face

4   scans and where the [DiF] Dataset was created."). No discovery is needed to establish what

5   Plaintiffs' allegations clearly show: None of Google's conduct on which Plaintiffs' BIPA claims

6   are based occurred in Illinois, let alone "primarily and substantially" in Illinois. *Avery*, 835

7   N.E.2d at 853-54.

8       **B.      If BIPA is interpreted to apply to the facts alleged by Plaintiffs, it would
            violate the dormant Commerce Clause.**

9

10      If BIPA is interpreted to apply to the facts alleged by Plaintiffs, BIPA violates the

11  dormant Commerce Clause. Like the extraterritoriality doctrine, the dormant Commerce Clause

12  limits "the authority of the States to enact legislation affecting interstate commerce," and

13  "precludes the application of a state statute" that has "the practical effect of . . . control[ling]

14  conduct beyond the boundaries of the State," even where "the commerce has effects within the

15  State." *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1, 336 (1989) (citations omitted).

16      Plaintiffs' BIPA claims attempt to do just that: regulate conduct which occurred entirely

17  outside of Illinois. As discussed in Section I.A, *supra*, Plaintiffs do not allege a single action

18  taken by Google in Illinois. For example, they do not allege that Google obtained or stored

19  Plaintiffs' Biometric Data in Illinois, that it used such data to improve its products in Illinois, or

20  that it had any interaction with Plaintiffs in Illinois. They merely allege that they are Illinois

21  residents and that they uploaded certain photos to Flickr—not Google—from devices located in

22  Illinois. Compl., ¶¶ 6-7, 59, 68. If BIPA were applied to these facts, it would effectively prohibit

23  companies such as Google from conducting research using datasets created by third parties based

24  on the mere possibility that even a single photograph depicts an Illinois resident, which, of

25  course, is often impossible to determine.

26      While Plaintiffs suggest that Google could have used the information provided in the DiF

27  Dataset to identify their Flickr pages, determine their Illinois residency, and ask for their consent

28

-10-

via Flickr's direct mail service (*id.*, ¶¶ 61, 69), they ignore the fact that this work could only be done *after* Google received the DiF Dataset. *See id.*, ¶ 50 ("The information provided to companies that downloaded the [DiF Dataset] included the biometric identifiers and information extracted from each photograph in the dataset and links to each photograph on Flickr from which IBM extracted the biometric data."). But BIPA requires that consent be obtained "first," before Collecting Biometric Data, which is impossible because Google did not have the means to contact Plaintiffs until after it was already in possession of the DiF Dataset allegedly containing Plaintiffs' Biometric Data. 740 ILCS 14/15(b). This suggestion is problematic for an additional reason: Even with the information provided in the DiF Dataset, it would be difficult if not impossible to determine with certainty whether a particular photo depicts the account holder or someone else. And where the photo includes people aside from the account holder, as Plaintiff Vance alleges, there is no way for Google to identify who they are or whether they are residents of Illinois, or contact them to obtain consent. *See, e.g.*, Compl., ¶ 59 (alleging that Plaintiff Vance's 2008 Photo depicted "himself and two family members"). In sum, it would have been impossible for Google to obtain Plaintiffs' consent before it obtained the DiF Dataset, and it would have been equally impossible for Google to identify and obtain consent from all photo subjects who reside in Illinois.

BIPA imposes staggering statutory damages for each violation. Thus, if BIPA is interpreted to apply to the facts as alleged in this case, the upshot is that Google and other companies, as well as other research and academic institutions, will have no choice but to forego research based on third-party datasets nationwide to avoid risking liability under BIPA. In other words, the "practical effect" of BIPA would be "to control conduct beyond the boundaries of the State," *Healy*, 491 U.S. at 336—a clear violation of the dormant Commerce Clause.[4] *See also*

_____

[4] The dormant Commerce Clause also prevents "inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Healy*, 491 U.S. at 336-37 (citation omitted). Applying BIPA to the facts alleged here would *displace* the regulatory

1    *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986) (a state

2    statute that directly regulates interstate commerce is "struck down . . . without further inquiry");

3    *TelTech Sys., Inc. v. McCollum*, No. 08-61664-CIV, 2009 WL 10626585, at *8 (S.D. Fla. July 16,

4    2009) (holding that a state caller ID statute had the "practical effect" of regulating commerce

5    "wholly outside the state"—and thus violated the dormant Commerce Clause—because it would

6    be "impossible" for parties to determine *ex ante* whether the statute applied to any given call).

7          *Sam Francis Foundation v. Christies, Inc.* is instructive. There, the Ninth Circuit "easily

8    conclude[d]" that a statute which sought to regulate out-of-state conduct with "no necessary

9    connection with the state other than the residency" of those involved in the transaction violated

10   the dormant Commerce Clause. 784 F.3d 1320, 1323 (9th Cir. 2015) (en banc) *cert. denied,* 136

11   S. Ct. 795 (2016). *Sam Francis* involved a portion of the California Resale Royalty Act

12   ("CRRA") which required the seller of fine art to pay the artist a five percent royalty if "the seller

13   resides in California or the sale takes place in California," even if the artwork was sold out-of-

14   state or involved only out-of-state residents. *Id.* at 1322. The court held that the CRRA's royalty

15   requirement violated the dormant Commerce Clause because it "facially regulate[d] a commercial

16   transaction that 'takes place wholly outside of the State's borders.'" *Id.* at 1323-24 (citation

17   omitted).

18   _____

19   regime of California, where Google is headquartered. Unlike Illinois, California does not broadly

20   regulate biometric data. Even California's most sweeping privacy law, the California Consumer

21   Privacy Act, Cal. Civ. Code § 1798.100 *et seq.* ("CCPA"), does not require informed written

22   consent prior to the collection of biometric information (like BIPA 14/15(b)), prohibit private

23   entities from profiting from biometric information (like BIPA 14/15(c)), or provide any person

24   who is "aggrieved" with a private right of action (like BIPA 14/20). California has taken a

25   different approach to the regulation of biometric data. Allowing Plaintiffs' BIPA claims to

26   proceed against Google would result in Illinois projecting its policy decisions into California—a

27   clear violation of the dormant Commerce Clause.

28

-12-

Other courts have invalidated state laws purporting to regulate the Internet where the statute regulates conduct occurring outside the borders of the state. *See, e.g.*, *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 958 (N.D. Cal. 2006) (collecting cases). For example, in *American Booksellers Foundation v. Dean*, 342 F.3d 96 (2d Cir. 2003), the Second Circuit struck down a state law that prohibited the distribution of pornographic material to minors over the Internet. "Because the internet does not recognize geographic boundaries," the court observed, "it is difficult, if not impossible, for a state to regulate internet activities without 'project[ing] its legislation into other States.'" *Id.* (quoting *Healy*, 491 U.S. at 334). The court held that the law violated the dormant Commerce Clause because it had the "practical effect" of regulating out-of-state conduct where the "the rest of the nation" would be "forced to comply with its regulation or risk prosecution." *Id.* at 103. Indeed, the court "th[ought] it likely that the internet will soon be seen as falling within the class of subjects that are protected from State regulation because they 'imperatively demand[] a single uniform rule.'" *Id.* at 104 (citation omitted). This case bears that prophecy out: If Illinois can regulate the use of nationwide datasets, it will necessarily project BIPA into other states. The dormant Commerce Clause prohibits just that.

As applied in this case, BIPA violates the dormant Commerce Clause. Plaintiffs' BIPA claims should be dismissed.[5]

### C. BIPA does not apply to information derived from photographs.

By its plain terms, BIPA does not apply to "photographs" or "information derived from [photographs]." *See* 740 ILCS 14/10. BIPA only regulates two types of biometric data: (1) "Biometric identifier[s]" which include "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," and expressly excludes "photographs," and (2) "Biometric information,"

---

[5] The Court can and should avoid these questions by dismissing Plaintiffs' claims on extraterritoriality grounds because none of Google's alleged conduct occurred in Illinois. *See Frisby v. Schultz*, 487 U.S. 474, 483 (1988) (it is a "well-established principle that statutes will be interpreted to avoid constitutional difficulties").

-13-

1   which is information "based on an individual's biometric identifier used to identify an

2   individual," and expressly excludes "information derived from [photographs]. *Id*. Although

3   Plaintiffs do not clearly allege what data Google obtained that constitutes biometric identifiers or

4   biometric information, Plaintiffs do clearly allege that such data was "extracted" by IBM from

5   photographs uploaded to Flickr. *See* Compl., at ¶¶ 50, 41-46. Because the photos of Plaintiffs that

6   IBM allegedly analyzed are not "biometric identifiers," and the information that IBM allegedly

7   derived from those photos is not "biometric information," Plaintiffs have not and cannot state a

8   claim under BIPA.

9        The text of the statute makes clear that the Illinois General Assembly intended the term

10   "biometric identifier" to refer only to things obtained in person, from the source of the Biometric

11   Data. Everything included in the definition of "biometric identifier"—"a retina or iris scan,

12   fingerprint, voiceprint, or scan of hand or face geometry"—can only be obtained with an actual

13   person present. 740 ILCS 14/10. For example, a "retina . . . scan" is obtained by scanning a

14   person's "retina," a "fingerprint" by printing a person's "finger[]," and so on. The same is true of

15   the things that BIPA excludes from the definition of "biometric identifier," such as "writing

16   samples, written signatures, photographs, human biological samples," "X-ray[s]," "MRI[s]," and

17   "PET scan[s]." *Id.* All of these things are obtained in person. Thus, a "scan of . . . face geometry,"

18   read in context, refers only to a scan of the geometry of a person's physical face—that is, it must

19   be derived directly from the subject, not from a photo of the subject. *See People v. Diggins*, 919

20   N.E.2d 327, 332 (Ill. 2009) (explaining that under the canon of *noscitur a sociis*, "the meaning of

21   questionable words or phrases in a statute may be ascertained by reference to the meaning of

22   words or phrases associated with it") (internal quotation marks and citation omitted).

23        The structure of the statute reinforces this conclusion. The General Assembly

24   distinguished "biometric identifiers" from "biometric information" based on the *source* of the

25   data at issue. A "biometric identifier" is derived directly from the subject, whereas "biometric

26   information" is "*based on* an individual's biometric identifier" and is thus one step removed. 740

27   ILCS 14/10 (emphasis added). In other words, what is derived from a person is a "biometric

28

-14-

1   identifier," and what is subsequently derived from a biometric identifier is "biometric

2   information." Therefore, a "scan of . . . face geometry," which is a type of biometric identifier,

3   must be derived directly from the subject and not from a photograph.

4        Indeed, all of BIPA's requirements, including those at issue here, apply equally to both

5   "biometric identifiers" and "biometric information." *See, e.g.*, 740 ILCS 14/15(b). Given that the

6   two terms appear side by side throughout the statute, it would not make sense for the General

7   Assembly to expressly *exclude* certain things from one definition, only for those same things to

8   fall within the other definition. Here, the General Assembly expressly excluded information

9   derived from photos from the definition of "biometric *information*"; that exclusion becomes

10  superfluous if the very same information is included in the definition of "biometric *identifier*."

11  *See Innovative Modular Sols. v. Hazel Crest Sch. Dist. 152.5*, 965 N.E.2d 414, 418 (Ill. 2012)

12  ("We consider the statute in its entirety and must avoid a construction that renders any part of it

13  meaningless or superfluous.").

14       BIPA's "written release" requirement also supports this reading. That provision requires

15  that a private entity obtain a subject's informed written consent *before* it obtains the subject's

16  "biometric identifier." 740 ILCS 14/15(b). When a scan of face geometry is collected from a

17  subject in person, there is always an opportunity to get that person's informed consent. But if

18  "biometric identifier" is interpreted to include information derived from photos, that opportunity

19  would often not exist. It is frequently impossible to identify each and every person in a photo,

20  much less obtain their contact information to provide notice and obtain consent. Because the

21  General Assembly contemplated at least an opportunity for informed consent when it enacted

22  BIPA, the fact that such an opportunity would often not even exist if BIPA applied to information

23  derived from photos demonstrates that such a reading is wrong and should be rejected.

24       The legislative history also supports Google's reading. BIPA was motivated by the

25  "growing" use of "biometrics" during in-person "biometric-facilitated financial transactions,"

26  including "finger-scan technologies at grocery stores, gas stations, and school cafeterias," all of

27  which are in person transactions. 740 ILCS 14/5(a), (b). There is no indication that the General

28

-15-

1   Assembly intended to regulate information derived from photos. Had it actually intended to enact

2   a law that broad, surely that would have been mentioned. *See Chisom v. Roemer*, 501 U.S. 380,

3   396 n.23 (1991). Finally, the General Assembly considered versions of the bill that would have

4   covered "facial recognition" explicitly, or "records" rather than "scans" of face geometry. *See*

5   Bali Decl., Exs. F (S.B. 2400, 95th Gen. Assemb., Reg. Sess., § 10, S. Floor Amend. No. 4 (Ill.

6   Apr. 11, 2008)); G (S.B. 2400, 95th Gen. Assemb., Reg. Sess., § 10 (Ill. Feb. 14, 2008)). But

7   instead it chose to target the in-person scans that prompted it to legislate in the first place. *See*

8   *Laborer's Int'l Union of N. Am., Local 1280 v. State Lab. Rels. Bd.*, 507 N.E.2d 1200, 1204 (Ill.

9   App. Ct. 1987) ("[T]he intent of the state legislature can be derived not only from the language

10  actually adopted, but also from the language which was changed or not adopted.").

11         Although other courts have resolved this issue of statutory interpretation differently, those

12  decisions are not binding on this Court and their reasoning is unpersuasive. *See Hart v.*

13  *Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001). In *In re Facebook Biometric Information*

14  *Privacy Litigation*, the court interpreted "photographs" to refer only to "paper prints of

15  photographs, not digitized images." 185 F. Supp. 3d 1155, 1171 (N.D. Cal. 2016). That

16  interpretation is contrary to the ordinary meaning of the word "photographs," which in 2008 (and

17  now) is understood to include digital photographs. *See* Oxford English Dictionary,

18  www.oed.com/view/Entry/142818 (last visited Sept. 23, 2020) (defining "photograph" to include

19  "a picture made by focusing an image and then storing it digitally," and citing an example of that

20  usage from 1998). That interpretation is also unsupported by BIPA's legislative history, which

21  contains no indication that the General Assembly intended to give such a common term such a

22  narrow meaning. And the *Facebook* court's interpretation would lead to absurd results, as just

23  *taking* a digital photo would constitute a "scan of . . . face geometry" because such a digital photo

24  would not fall within the exclusion for "photographs."

25         In *Rivera v. Google Inc.*, the court rejected the *Facebook* court's finding that

26  "photographs" are limited to "paper prints," but nonetheless held that information derived from

27  photos could qualify as a "biometric identifier." 238 F. Supp. 3d at 1096 n.7; *see also Vance v.*

28

-16-

1    *IBM*, No. 20-cv-0057, 2020 WL 5530134, at *4-5 (N.D. Ill. Sept. 15, 2020) (adopting the *Rivera*

2    court's reasoning). But Google's reading is compelled by the canons of statutory interpretation, as

3    it makes sense of BIPA's structure and assigns meaning to every term. *See Kraft, Inc. v. Edgar*,

4    561 N.E.2d 656, 661 (Ill. 1990) ("[I[n ascertaining the meaning of a statute, the statute should be

5    read as a whole with all relevant parts considered . . . [and] should be construed so that no word

6    or phrase is rendered superfluous or meaningless.") (citations omitted). Under Google's reading,

7    there is a distinction between the definitions of biometric identifier and biometric information: A

8    biometric identifier is derived in person, while biometric information is derived from an

9    identifier. And the *Rivera* court's unwillingness to infer anything about the meaning of "biometric

10   identifier" from the items expressly excluded from the definition of that term overlooked the fact

11   that they *all* derive from an in-person interaction. Finally, the *Rivera* court did not address the

12   point that there is no reason the General Assembly would go through the trouble of creating an

13   exception for information derived from photos from the definition of "biometric information" if

14   that very thing were subsumed by the definition of "biometric identifier." Plaintiffs' reading

15   would render that exception superfluous and should thus be avoided. *See id*.

16          In short, the text, structure, and purpose of BIPA all confirm that it does not cover

17   information derived from photos. Accordingly, Plaintiffs have not and cannot plead a violation of

18   BIPA, and the Complaint should be dismissed with prejudice. *See Balistreri v. Pacifica Police*

19   *Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (explaining that "[d]ismissal can be based on the lack of

20   a cognizable legal theory").

21          **D.    Plaintiffs have not alleged facts showing that Google did more than "possess"
               their Biometric Data, and thus have not stated a claim under Section 15(b).**

22          As many Illinois courts have recognized, Section 15(b) does not apply to the mere

23   "possession" of Biometric Data by a third-party entity with no direct relationship to the data

24   subject. *See, e.g., Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 965-57 (N.D. Ill.

25   2020); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285-86 (N.D. Ill. 2019); *Bernal v. ADP,*

26   *LLC,* No. 2017-CH-12364, 2019 WL 5028609, at *1 (Ill. Cir. Ct. Aug. 23, 2019); *but see*

27

28

-17-

1   *Figueroa v. Kronos Inc.*, No. 19 C 1306, 2020 WL 1848206, at \*5-6 (N.D. Ill. Apr. 13, 2020).

2   Rather, it only applies to entities that "take an active step" to "collect, capture, purchase, receive

3   through trade, or otherwise obtain" Biometric Data. *Heard*, 440 F. Supp. 3d at 966 (internal

4   quotation marks and citations omitted). Plaintiffs do not allege that Google took any "active step"

5   to obtain Plaintiffs' Biometric Data, or that Google had any relationship with Plaintiffs at all.

6   Rather, they allege that Google received the DiF Dataset from IBM, which included Plaintiffs'

7   Biometric Data, without providing notice and obtaining Plaintiffs' consent. Compl., ¶¶ 55, 64-65.

8   This does not state a claim under Section 15(b).

9        BIPA's text, purpose, and structure all make clear that Section 15(b) does not apply to the

10  mere possession of Biometric Data. First, the term "possession" does not even appear in Section

11  15(b), although it appears in every other subsection of Section 15. Indeed, subsections (a), (c),

12  (d), and (e) all impose requirements on private entities "in possession of" Biometric Data,

13  whereas (b) is the only subsection that does not. Instead, Section 15(b) imposes notice and

14  consent requirements on private entities that "collect, capture, purchase, receive through trade, or

15  otherwise obtain a person's" Biometric Data. 740 ILCS 14/15(b). By choosing not to use the term

16  "possession" in Section 15(b), but using it in the other four subsections, the General Assembly

17  clearly intended to apply a different meaning to Section 15(b). *See Dana Tank Container, Inc. v.*

18  *Hum. Rts. Comm'n*, 687 N.E. 2d 102, 104 (Ill. App. 1997) ("Where the legislature uses certain

19  words in one instance and different words in another, it intended different results.").

20       Unlike the other subsections, Section 15(b) requires some affirmative action by the private

21  entity to obtain a person's Biometric Data. The terms "collect" and "capture" cover the initial

22  creation of the Biometric Data, such as taking a person's fingerprint. *See, e.g., Rosenbach v. Six*

23  *Flags Ent. Corp.*, 129 N.E.3d 1197, at ¶¶ 6, 11 (Ill. 2019) (asserting claim under Section 15(b)

24  based on the scanning of a thumb into defendants' "biometric data capture system" without the

25  required notice and consent). And the terms "purchase" and "receive through trade" suggest some

26  payment of money or other consideration in exchange for Biometric Data, which Plaintiffs do not

27  allege. *See* Merriam-Webster, http://www.merriam-webster.com/dictionary/purchase (last visited

28

-18-

Sept. 23, 2020) (defining "purchase" as "to obtain by paying money or its equivalent"); *see also* Compl., ¶ 55 (simply alleging that Google "applied for and obtained" the DiF Dataset after IBM made it available). The phrase "or otherwise obtain" does not change this result. Like the other verbs in Section 15(b), the term "obtain" requires some active behavior. *See* Black's Law Dictionary (11th ed. 2019) (defining "obtain" as "[t]o bring into one's own possession; to procure, esp. through effort"); *see also* Merriam-Webster, http://www.merriam-webster.com/dictionary/obtain (last visited Sept. 23, 2020) ("to gain or attain usually by planned action or effort"). Thus, Section 15(b) only applies to entities that actively take steps to Collect a person's Biometric Data (such as collecting a fingerprint from an employee). *See Heard*, 440 F. Supp. 3d at 966.

Moreover, the General Assembly did not intend for Section 15(b) to apply to a third-party entity that has no relationship with the data subject. *See Bernal*, 2019 WL 5028609, at * 1 ("[T]here is nothing to suggest that BIPA was intended to apply to situations wherein the parties are without any direct relationship"). BIPA's "written release" requirement illustrates this best: If a private entity has no relationship with a person, how can that entity provide notice and obtain written consent from that person? Even if the entity receives information sufficient to identify and contact the subject after receiving their Biometric Data, as Plaintiffs suggest here, that does not explain how the entity can comply with BIPA, which requires that consent be obtained "first"—*before* Collecting the subject's Biometric Data. 740 ILCS 14/15(b); *see also Bernal*, 2019 WL 5028609, at *1 (noting that Section 15(b) "imposes certain *preconditions* that private entities must comply with *before* they can 'collect, capture, purchase, receive through trade, or otherwise obtain' an individual's biometric information") (emphasis added). This reading is also consistent with the purpose of Section 15(b), as articulated by the Illinois Supreme Court, which is to vest "in individuals and customers the right to control their biometric information . . . *before* collection and giving them the power to say no by withholding consent." *Rosenbach*, 129 N.E.3d at 1206 (emphasis added).

Here, Google has no relationship with Plaintiffs. Plaintiffs do not allege that they are Google users or that they uploaded any photographs to Google's servers. Rather, they allege that they were Flickr users, and that some of the photos that they uploaded to Flickr along with Biometric Data that IBM "extracted" from those photos were included in the DiF Dataset that Google received from IBM. Compl., ¶¶ 50, 60, 62, 68, 70. Thus, at most, Google is merely a recipient of Plaintiffs' Biometric Data that was generated by a third party (IBM) from photographs uploaded to a third-party site (Flickr). It is difficult to imagine how Google could have complied with Section 15(b) under these circumstances, which shows that BIPA was not intended to apply in this scenario. *See Bernal*, 2019 WL 5028609, at *1 (noting that "to read BIPA as requiring that a third party . . . without any direct relationship with [the subject], obtain written releases from said [subject] would be unquestionably not only inconvenient but arguably absurd."); *see also Rosenbach*, 129 N.E.3d at 1207 ("Compliance [with Section 15(b)] should not be difficult.").

**E.**     **Plaintiffs fail to allege facts showing that Google profited from their Biometric Data in violation of Section 15(c).**

Section 15(c) states that private entities in possession of Biometric Data may not "sell, lease, trade, or otherwise profit" from a person's Biometric Data. 740 ILCS 14/15(c). Here, Plaintiffs do not allege that Google sold, leased, or traded their Biometric Data, or that Google otherwise exchanged their Biometric Data for some financial benefit. Rather, Plaintiffs allege that Google used their Biometric Data to improve Google's facial recognition technology, thereby making their products more valuable in the commercial marketplace. Compl., ¶ 58. This theory does not state a claim under Section 15(c).

Section 15(c) is clearly intended to prohibit private entities from exchanging Biometric Data for money or something else of value. This is made clear by the use of the terms "sell," "lease," and "trade," and the phrase "otherwise profit" should be interpreted in line with the verbs that precede it. *See Pooh-Bah Enters., Inc. v. Cnty. of Cook*, 905 N.E.2d 781, 799 (Ill. 2009) ("[W]hen a statutory clause specifically describes several classes of . . . things and then includes

-20-

1   'other . . . things,' the word 'other' is interpreted to mean 'other such like.'") (citation omitted). It

2   is certainly not intended to cover the use of third-party datasets for *research* designed to *improve*

3   the technology. Indeed, in enacting BIPA, the General Assembly recognized in 2008 that the

4   commercial use of biometrics was "growing," and that it promised certain benefits such as

5   "streamlined financial transactions and security screenings." 740 ILCS 14/5(a). Thus, it is

6   unlikely that the General Assembly intended to prohibit research designed to improve this

7   technology, even if it might eventually lead to more profitable products. This point is made even

8   more clear by the fact that prohibitions in Section 15(c) apply regardless of any consent from the

9   subject. Thus, to treat research designed to improve facial recognition technology as unlawful

10  profiting, effectively forecloses any such research by for-profit entities. This conflicts with the

11  stated purpose of BIPA and could not have been what the General Assembly intended.

12          Finally, Plaintiffs do not allege any facts showing that Google actually profited from their

13  Biometric Data. They merely allege, in a conclusory manner, that Google "profited from the

14  biometric identifiers and information contained in the DiF Dataset because those biometric

15  identifiers and information allowed Google to improve its facial recognition products and

16  technologies . . . thereby making those products and technologies more valuable in the

17  commercial marketplace." Compl., ¶ 58. But Plaintiffs do not plausibly allege that their Biometric

18  Data (which was allegedly derived from one photo out of the million photos included in the DiF

19  Dataset) caused any measurable improvement in Google's facial recognition technology. Nor do

20  they allege facts showing that any improvement in Google's technology resulted in increased

21  profits to Google. *See id.* ¶ 53. Plaintiffs' conclusory allegations do not state a claim for

22  violations of Section 15(c) simply because they use the word "profit." *See Ashcroft v. Iqbal*, 556

23  U.S. 662, 678-79 (2009) ("legal conclusions" and "conclusory statements" are insufficient to state

24  a claim); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57, 566-67, 570-71 (2007) (allegations

25  must rise above the level of "speculative," "conceivable" and "possible" to state a claim "that is

26  plausible on its face"). Plaintiffs' claim for violations of Section 15(c) should be dismissed.

27

28

-21-

**II.     Plaintiffs' Unjust Enrichment Claim Is Duplicative of Their BIPA Claim and Should Be Dismissed for the Same Reasons.**

Plaintiffs attempt to state a claim for unjust enrichment, however, the "unjust" conduct alleged is the same conduct that Plaintiffs plead in support of their claims for violation of BIPA. Compl., ¶ 111 ("Google obtained Plaintiffs' and Class Members' biometric identifiers and information through inequitable means in that it obtained Biometric Data from Plaintiffs' and Class Members' online photographs without permission and in violation of Illinois law."). Because Plaintiffs have not pleaded a claim under BIPA for the reasons discussed above, Plaintiffs likewise have not pleaded a legal basis for their unjust enrichment claim. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim [under Illinois law] rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.").

Further, even if this Court were to find that Plaintiffs had alleged a violation of BIPA, Plaintiffs have not pleaded a claim for relief under a theory of unjust enrichment because Plaintiffs have not alleged any facts that would tend to show that BIPA's significant statutory penalties do not provide an adequate remedy at law. *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75-76 (1992) ("[I]t is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief."); *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. 2005) ("Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law.") (citation omitted); *cf.* Compl., ¶ 112. Accordingly, the Court should dismiss this claim.

**III.    Plaintiffs' Injunctive Relief Claim Should Be Dismissed Because It Is a Remedy, Not a Cause of Action.**

Plaintiffs' claim for injunctive relief should also be dismissed. Injunctive relief is not a claim. Rather, "an injunction is an extraordinary remedy which may be granted when the plaintiff establishes that his remedy at law is inadequate and he will suffer irreparable harm without the

-22-

1   injunctive relief." *Sadat v. Am. Motors Corp.*, 470 N.E.2d 997, 1002 (Ill. 1984) (emphasis added).

2   Here, Plaintiffs have not pleaded a violation of BIPA (or any law) that would entitle them to

3   injunctive relief, and thus their "claim" for injunctive relief should be dismissed. *See* Section I,

4   *supra*.

5                                           **CONCLUSION**

6          For the foregoing reasons, Google respectfully requests that the Complaint be dismissed

7   with prejudice.

8

9

    DATED: September 23, 2020                 **PERKINS COIE LLP**

10

11                                            By:   */s/ Bobbie J. Wilson*
                                                     Bobbie J. Wilson
12
                                              Bobbie J. Wilson, Cal. Bar No. 148317
13                                            *BWilson@perkinscoie.com*
                                              Sunita Bali, Cal. Bar No. 274108
14                                            *SBali@perkinscoie.com*
                                              Mara Boundy, Cal. Bar No. 287109
15                                            *MBoundy@perkinscoie.com*
                                              505 Howard Street, Suite 1000
16                                            San Francisco, CA 94105
                                              Telephone: (415) 344-7000
17                                            Facsimile: (415) 344-7050

18
                                              Susan D. Fahringer, Cal. Bar No. 162978
19                                            *SFahringer@perkinscoie.com*
                                              Lauren J. Tsuji, Cal. Bar No. 300155
20                                            *LTsuji@perkinscoie.com*
                                              1201 Third Avenue, Suite 4900
21                                            Seattle, WA 98101
                                              Telephone: (206) 359-8000
22                                            Facsimile: (206) 359-9000

23
                                              Attorneys for Defendant
24                                            GOOGLE LLC

25

26

27

28