1  Bobbie J. Wilson, Bar No. 148317
   BWilson@perkinscoie.com
2  Sunita Bali, Bar No. 274108
   SBali@perkinscoie.com
3  PERKINS COIE LLP
   505 Howard Street, Suite 1000
4  San Francisco, California 94105
   Telephone: +1.415.344.7000
5  Facsimile:  +1.415.344.7050

6  Susan D. Fahringer, Bar No. 162978
   SFahringer@perkinscoie.com
7  Lauren J. Tsuji, Bar No. 300155
   LTsuji@perkinscoie.com
8  Anna Mouw Thompson (*pro hac vice*)
   AnnaThompson@perkinscoie.com
9  PERKINS COIE LLP
   1201 Third Avenue, Suite 4900
10 Seattle, Washington 98101-3099
   Telephone: +1.206.359.8000
11 Facsimile:  +1.206.359.9000

12
   Attorneys for Defendant
13 GOOGLE LLC

14                 UNITED STATES DISTRICT COURT

15               NORTHERN DISTRICT OF CALIFORNIA

16                      SAN JOSE DIVISION

17

18 STEVEN VANCE and TIM JANECYK, for        Case No. 5:20-cv-04696-BLF
   themselves and others similarly situated,
19                                          DEFENDANT GOOGLE LLC'S REPLY IN
                Plaintiffs,                 SUPPORT OF MOTION TO DISMISS
20        v.                                COMPLAINT

21 GOOGLE LLC, a Delaware limited liability  Date:     February 15, 2024
   company,                                  Time:     9:00am
22                                           Location: Courtroom 3 – 5th Floor
                Defendant.                   Judge:    Hon. Beth Labson Freeman
23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3

INTRODUCTION ................................................................................................... 1

4

ARGUMENT ......................................................................................................... 1

5

    I.     Plaintiffs' BIPA claims should be dismissed because they attempt to apply

6

             BIPA extraterritorially. ............................................................................. 1

7

    II.    Plaintiffs' claim under BIPA Section 15(c) fails. .................................... 5

8

          A.    Plaintiffs do not allege that Google exchanged their Biometric Data

                for a financial benefit. .................................................................. 5

9

          B.    Plaintiffs do not plausibly allege that Google profited from use of

10

                their Biometric Data. ..................................................................... 8

11

    III.   Plaintiffs' unjust enrichment claim fails for failing to identify applicable

             law and for the same reasons as their BIPA claims. ............................... 9

12

    IV.   Plaintiffs' claim for injunctive relief should be dismissed because

13

             injunctive relief is a remedy, not a cause of action. ............................. 10

14

    V.    Dismissal should be with prejudice. .................................................... 10

CONCLUSION ................................................................................................... 11

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3
CASES

4
*Angeles v. U.S. Airways, Inc.*,

5
No. C 12-05860 CRB, 2013 WL 622032 (N.D. Cal. Feb. 19, 2013)...................................4, 10

6
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................................5, 10

7
*Avery v. State Farm Mut. Auto. Ins.*,

8
216 Ill. 2d 100 (2005) ............................................................................................................3, 4, 11

9
*Bell Atl. Corp. v. Twombly*,

10
550 U.S. 544 (2007) ..........................................................................................................................9

11
*Clark v. Microsoft Corp.*,
No. 23 C 695, 2023 WL 5348760 (N.D. Ill. Aug. 21, 2023) ............................................................5

12
*Cleary v. Philip Morris Inc.*,

13
656 F.3d 511 (7th Cir. 2011)........................................................................................................9, 10

14
*Conservation Force v. Salazar*,

15
677 F. Supp. 2d 1203 (N.D. Cal. 2009) .......................................................................................10

16
*Gutierrez v. Wemagine.AI LLP*,
No. 21 C 5702, 2022 WL 252704 (N.D. Ill. Jan. 26, 2022).....................................................4, 5

17
*In re Clearview AI, Inc., Consumer Privacy Litigation*,

18
No. 21-CV-135, 2022 WL 252702 (N.D. Ill. Jan. 27, 2022) .....................................................7, 8

19
*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
No. 16-CV-06391-BLF, 2018 WL 1576457 (N.D. Cal. Mar. 30, 2018) .......................................9

20

21
*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)........................................................................................................................4

22
*McGoveran v. Amazon Web Servs., Inc.*,

23
C.A. No. 20-13399-LPS, 2021 WL 4502089 (D. Del. Sept. 30, 2021) .................................2, 4

24
*O'Malley as Tr. Under Tr. Agreement Dated Jan. 1, 2006 v. Adams as Tr. of Almyra M. Prather Revocable Tr. Agreement Dated Dec. 15, 1967*,

25
2023 IL App (5th) 210381 ......................................................................................................9, 10

26
*Patel v. Facebook, Inc.*,

27
932 F.3d 1264 (9th Cir. 2019)...................................................................................................2

28

ii

*Pooh-Bah Enters., Inc. v. County of Cook*,
    232 Ill. 2d 463 (2009) ...................................................................................................5, 6

*Redd v. Amazon Web Servs., Inc.*,
    No. 22 C 6779, 2023 WL 3505264 (N.D. Ill. May 17, 2023)........................................4, 5

*Shaw v. Hyatt Int'l Corp.*,
    No. 05 C 5022, 2005 WL 3088438 (N.D. Ill. Nov. 15, 2005) ....................................3, 4, 11

*Stein v. Clarifai, Inc.*,
    526 F. Supp. 3d 339 (N.D. Ill. 2021) ...........................................................................4, 5

*Thornley v. Clearview AI, Inc.*,
    984 F.3d 1241 (7th Cir. 2021)......................................................................................6, 8

*Vance v. Amazon.com Inc.*,
    525 F. Supp. 3d 1301 (W.D. Wash. 2021)................................................................3, 4, 10

*Vance v. Amazon.com, Inc.*,
    No. C20-1084JLR, 2022 WL 12306231 (W.D. Wash. Oct. 17, 2022)...................................4, 5

*Vance v. International Business Machines Corp.*,
    No. 20 C 577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020)........................................2, 4

*Vance v. Microsoft Corp.*,
    525 F. Supp. 3d 1287 (W.D. Wash. July 14, 2020) ........................................... passim

*Vance v. Microsoft Corp.*,
    534 F. Supp. 3d 1301 (W.D. Wash. 2021)..............................................................1, 5, 6, 7

*Vance v. Microsoft Corp.*,
    No. C20-1082JLR, 2022 WL 9983979 (W.D. Wash. Oct. 17, 2022)....................................4

*Vigil v. Take-Two Interactive Software, Inc.*,
    235 F. Supp. 3d 499 (S.D.N.Y. 2017)...........................................................................7

*Warmack-Stillwell v. Christian Dior, Inc.*,
    655 F. Supp. 3d 742 (N.D. Ill. 2023) ..........................................................................7, 8

**STATUTES**

740 ILCS 14/5 ...........................................................................................................7

740 ILCS 14/15 ................................................................................................... passim

**RULES**

Fed. R. Civ. Proc. 12 .................................................................................................8

iii

**INTRODUCTION**

Plaintiffs should not be permitted to manufacture BIPA claims against Google where none exist. Plaintiffs complain that Google should have given them notice and consent before it obtained the Diversity in Faces Dataset ("DiF Dataset") from New York-based IBM, which, in turn, created the DiF DataSet based on photographs that it obtained from California-based Flickr—the *only* company with which Illinois-based Plaintiffs allegedly interacted. But the Illinois Biometric Information Privacy Act ("BIPA") doesn't apply beyond the confines of Illinois, and Plaintiffs have not identified *any* relevant conduct by Google taking place in Illinois. The entire Complaint should be dismissed based on the extraterritoriality doctrine.

Furthermore, Plaintiffs' claim for unlawful "profiting" under BIPA Section 15(c) fails for an additional reason: Plaintiffs do not and cannot allege that Google exchanged their biometric identifiers or biometric information ("Biometric Data") for a financial benefit to Google. Contrary to Plaintiffs' extreme position, BIPA does not impose a blanket ban on the use of Biometric Data to improve technologies in a profitable way, as another court held when dismissing Plaintiffs' claims in *Vance v. Microsoft Corp.* ("*Microsoft II*"), 534 F. Supp. 3d 1301 (W.D. Wash. 2021). Regardless, Plaintiffs have not alleged sufficient facts to support their (erroneous) legal theory.

Finally, Plaintiffs' unjust enrichment claim must be dismissed because Plaintiffs fail to specify the applicable law and because, under Illinois law, it is duplicative of their BIPA claims. And by failing to respond to Google's argument, Plaintiffs concede that their "claim" for injunctive relief fails because injunctive relief is a remedy and not a cause of action.

Google respectfully asks the Court to dismiss Plaintiffs' claims with prejudice.

**ARGUMENT**

**I.   Plaintiffs' BIPA claims should be dismissed because they attempt to apply BIPA extraterritorially.**

Plaintiffs are correct that, with respect to dismissal based on extraterritoriality, "each case must be decided on its own facts." Opp'n at 5. And in this case, Plaintiffs have failed to identify *any* conduct by Google in Illinois.

1    The allegations cited in Plaintiffs' opposition for their purported "*prima facie*" showing

2    on extraterritoriality do not show *any* action by Google in Illinois. *See* Opp'n at 6–7 (citing

3    Compl. ¶¶ 6–7, 59, 68, and 75–77). Even taken as true, those allegations establish only that

4    Plaintiffs are Illinois residents (Compl. ¶¶ 6–7); that Plaintiffs uploaded to third-party and

5    California-based company Flickr (*see* Dkt. 93 Ex. B) photographs of themselves from their

6    computers in Illinois (Compl. ¶¶ 59, 68); and that Plaintiffs purport to have been "injured" in

7    Illinois (Compl. ¶¶ 75–77). But these allegations are "nothing more than repeated statements

8    (phrased three different ways) about Plaintiffs' residency." *McGoveran v. Amazon Web Servs.,*

9    *Inc.*, C.A. No. 20-13399-LPS, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021).

10   Dismissal is warranted here for the same reasons as in *McGoveran*—a case that Plaintiffs

11   simply decline to address despite Google's repeated citations and lengthy summary of the case.

12   *See* MTD at 7–9. In *McGoveran* as here, Plaintiffs' allegations exclusively reflect Plaintiffs'

13   residency and unilateral conduct. And as in *McGoveran*, where third-party Pindrop Security stood

14   between the plaintiffs and Amazon, here, *two* third parties stand between Plaintiffs and Google:

15   California-based Flickr and New York-based IBM. Most of the cases that Plaintiffs cite in

16   response, such as *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1275–76 (9th Cir. 2019), do not involve

17   similar intervening parties or circumstances. (In fact, in *Facebook*, the defendant did not dispute

18   that the plaintiffs identified relevant conduct by Facebook in Illinois; rather, Facebook

19   unsuccessfully opposed class certification because "mini-trials" would be necessary to determine

20   the extraterritoriality question for each individual Facebook user).

21   Plaintiffs respond that their claims should survive because other courts have allowed them

22   to pursue (dead-end) discovery. *See* Opp'n at 7–9. But Plaintiffs ignore important distinctions

23   between those cases and this case. First, in *Vance v. International Business Machines Corp.*, No.

24   20 C 577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020), the court permitted discovery to

25   determine "where IBM performed the face scans and where the DIF Dataset was created." But

26   here, Plaintiffs do not allege that Google performed face scans or created the DiF Dataset; they

27   allege only that Google *received* face scans and the DiF Dataset. *See, e.g.*, Compl. ¶¶ 41–43; 56–

28   58. Similarly, in *Microsoft I*, Plaintiffs' complaint described Microsoft's "'extensive business'

within Illinois related to the facial recognition products," including, for example, through allegations that Microsoft "work[ed] with the University of Illinois, among others, to build and promote a 'digital transformation institute' aimed at 'accelerating the application of artificial intelligence' throughout business and society." Complaint ¶ 59, *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287 (W.D. Wash. July 14, 2020) (No. 20-cv-01082), ECF No. 1. Plaintiffs do not make similar allegations here. They instead only vaguely reference Google's research efforts at colleges "across the country," while providing examples in California and Georgia. Compl. ¶ 54. Finally, in *Amazon I*, Plaintiffs' complaint described partnerships with "more than 1,300 law enforcement agencies," *Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301, 1306 (W.D. Wash. 2021), through which Amazon allegedly collected footage from Ring home security cameras in connection with its Rekognition software. In support, the complaint cited an article that links out to a map showing where these agencies are located—including many in Illinois. *See* Complaint ¶ 57 n.18, *Vance v. Amazon.com, Inc.*, 525 F. Supp. 3d 1301 (W.D. Wash. July 14, 2020) (No. 20-cv-01084-RAJ), ECF No. 1 (citing https://www.technologyreview.com/2020/06/12/1003482/amazon-stopped-selling-police-face-recognition-fight/, which links to https://www.google.com/maps/d/u/0/viewer?mid=1eYVDPh5itXq5acDT9b0BVeQwmESBa4cB&ll=36.194591702507864%2C-103.96982876449249&z=3).

    Plaintiffs have already had years of discovery against other defendants related to the DiF Dataset through their other lawsuits, and their threadbare allegations against Google do not entitle them to more against Google. Nor do Plaintiffs' latest allegations in their opposition brief—namely, that Google has two offices in Chicago. *See* Opp'n at 10. The *Avery* test is not satisfied by merely pointing to an Illinois office. *See, e.g.*, *Avery v. State Farm Mut. Auto. Ins.*, 216 Ill. 2d 100, 187 (2005) (dismissing even where State Farm created the allegedly fraudulent company policy from its Illinois headquarters where Plaintiff resided in Louisiana and the disputed car accident was in Louisiana); *Shaw v. Hyatt Int'l Corp.*, No. 05 C 5022, 2005 WL 3088438, at *2 (N.D. Ill. Nov. 15, 2005) (dismissing even where "Hyatt maintains its principal place of business in Illinois" where non-resident booked hotel room from abroad), *aff'd*, 461 F.3d 899 (7th Cir. 2006); *McGoveran*, 2021 WL 4502089, at *1 (dismissing Illinois' resident's claim even where

1    AWS was "registered to do business in Illinois"). Indeed, if simply identifying an Illinois office

2    were enough, then plaintiffs could demand discovery from any company with a national footprint

3    armed with nothing but a threadbare complaint.

4              Regardless, *IBM*, *Amazon I*, and *Microsoft I* are not binding on this Court. And the

5    decision in *McGoveran* is far more persuasive and on point. The same is true of the analogous

6    cases cited in Google's motion, where courts dismissed BIPA claims for lack of specific personal

7    jurisdiction. It is difficult, if not impossible, to pass the more exacting extraterritoriality test

8    (demanding conduct taking place "primarily and substantially" in Illinois, *Avery*, 216 Ill. 2d at

9    187) but fail the lesser test for constitutional jurisdiction (demanding only some suit-related

10   activities that were "purposefully directed" at the forum state by the defendant, *Keeton v. Hustler*

11   *Magazine, Inc.*, 465 U.S. 770, 774 (1984)). If dismissal was justified for lack of specific personal

12   jurisdiction in cases where the plaintiffs alleged only unilateral conduct or where a third-party

13   stood between the plaintiffs and defendant, dismissal here is justified based on the same pleading

14   deficiencies under the extraterritoriality doctrine. *See Gutierrez v. Wemagine.AI LLP*, No. 21 C

15   5702, 2022 WL 252704, at *3 (N.D. Ill. Jan. 26, 2022) (unilateral conduct); *Stein v. Clarifai, Inc.*,

16   526 F. Supp. 3d 339, 344, 346 (N.D. Ill. 2021) (intervening party); *Redd v. Amazon Web Servs.,*

17   *Inc.*, No. 22 C 6779, 2023 WL 3505264, at *3 (N.D. Ill. May 17, 2023) (same). Notably,

18   Plaintiffs again decline to discuss these jurisdictional cases *at all*. Instead, Plaintiffs assert without

19   explanation that only one of Google's cited cases is "pertinent." *See* Opp'n at 8 (referring to

20   *Shaw*). But jurisdictional cases are "pertinent" because the extraterritoriality test is *more* exacting

21   than the jurisdictional test. *Compare* MTD at 9 (explaining relationship between tests), *with,*

22   *generally*, Opp'n (not responding to argument); *see also Angeles v. U.S. Airways, Inc.*, No. C 12-

23   05860 CRB, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) ("The failure to respond [to an

24   argument on the merits] amounts to a concession.").

25             Dismissal is warranted on extraterritoriality grounds for the same reasons as in

26   *McGoveran*, and for the same reasons that summary judgment was warranted in *Amazon III* and

27   *Microsoft III*. *See Vance v. Microsoft Corp.*, No. C20-1082JLR, 2022 WL 9983979 (W.D. Wash.

28   Oct. 17, 2022); *Vance v. Amazon.com, Inc.*, No. C20-1084JLR, 2022 WL 12306231 (W.D. Wash.

1    Oct. 17, 2022). Dismissal on extraterritorial grounds is also warranted for the same reasons that

2    dismissal on personal jurisdiction grounds was warranted in *Gutierrez*, *Stein*, and *Redd*. Plaintiffs

3    should not be permitted to rely on allegations even more threadbare than those in their past cases

4    to "unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

5    **II.  Plaintiffs' claim under BIPA Section 15(c) fails.**

6    Plaintiffs' claim under Section 15(c) fails for two additional reasons. First, the section

7    only prohibits the exchange of Biometric Data for a financial benefit, and Plaintiffs have not

8    alleged that Google sold, leased, traded or engaged in similar transactions related to their

9    Biometric Data. Second, Plaintiffs have not alleged facts to support the inference that Google

10   used their Biometric Data to improve its products in a profitable way.

11   **A.  Plaintiffs do not allege that Google exchanged their Biometric Data for a**
     **financial benefit.**

12
13   Section 15(c) provides that an entity may not "sell, lease, trade, or otherwise profit from"

14   a person's Biometric Data. 740 ILCS 14/15(c). Each of these terms "contemplate a transaction in

15   which an item is given or shared in exchange for something of value," such that the final,

16   "otherwise profit" term must be interpreted to be limited in the same way. *Microsoft II*, 534 F.

17   Supp. 3d at 1306; *see Pooh-Bah Enters., Inc. v. County of Cook*, 232 Ill. 2d 463, 492 (2009)

18   ("[W]hen a statutory clause specifically describes several classes of . . . things and then includes

19   'other . . . things,' the word 'other' is interpreted to mean 'other such like.'") (cleaned up). Thus,

20   Section 15(c) assumes the exchange of Biometric Data for a financial benefit. And because

21   Plaintiffs have alleged only that Google used the DIF database to "improve" its products, without

22   alleging that Google sold, leased, traded, or otherwise exchanged their Biometric Data for a

23   financial benefit, their Section 15(c) claim must be dismissed.

24   Plaintiffs' first response appears to be that the canon of *ejusdem generis* is limited to

25   nouns as opposed to verbs. That argument lacks support in logic or case law. *Compare* Opp'n at

26   15 (arguing that *Pooh-Bah* is inapplicable because Section 15(c) does not list "persons or

27   things"), *with, e.g.*, *Clark v. Microsoft Corp.*, No. 23 C 695, 2023 WL 5348760, at *2 (N.D. Ill.

28

1    Aug. 21, 2023) (applying the same *ejusdem generis* canon as in *Pooh-Bah* to "list of active verbs"

2    in BIPA Section 15(b)).

3         Plaintiffs next argue that their extreme interpretation of Section 15(c)—that the section is

4    violated whenever a business profits from use of Biometric Data—is supported by the Seventh

5    Circuit's decision in *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241 (7th Cir. 2021). That is not

6    true. The sentences immediately before and after the single sentence that Plaintiffs quote prove

7    the opposite. *Thornley* recognizes that Section 15(c) demands an exchange for value:

8         [W]e are left [in Section 15(c)] with a general rule that **prohibits the operation of**

9         **a market in biometric identifiers and information**. If it is not profitable to collect

10        or hold that data, one can assume that the incentive to collect it or hold it will be

11        significantly reduced. Much the same rationale supports **other laws that are**

12        **directed against market transactions.**

13   *Id.* at 1247 (emphasis added). Indeed, *Thornley* goes on to compare BIPA to regulations that

14   forbid the sale or barter of migratory birds—regulations that are clearly aimed at exchanges for

15   financial benefit and would not forbid other "profiting" activities, such as running a bird-

16   transportation business. *See id.* ("[The] [r]egulations . . . *permit* the possession or *transportation*

17   of certain migratory birds, and their parts, nests, or eggs, but they state that these items 'may not

18   be imported, exported, purchased, sold, bartered, or offered for purchase, sale, trade, or barter.'")

19   (emphasis added and cleaned up).

20        Plaintiffs also misapprehend the purpose of Section 15(c). They claim that the section

21   "seek[s] to eliminate the incentive for private entities to collect, possess or disseminate Biometric

22   Data." Opp'n at 11. But if the Illinois legislature wanted to stop private entities from collecting,

23   possessing, or disseminating Biometric Data, it would have said so. Plaintiffs' position that only

24   nonprofits should be able to use Biometric Data or that businesses should only be permitted to use

25   Biometric Data for "altruistic purpose[s]," Opp'n at 14, finds no support in BIPA's text. And it, in

26   fact, conflicts with BIPA's history. As explained in *Microsoft II*:

27        The legislature recognized the benefits of using biometrics but understood that if

28        biometrics are "compromised, the individual has no recourse, is at heightened risk

                                         6

for identity theft, and is likely to withdraw from biometric facilitated transactions."

740 ILCS 14/5(a), (c). To counteract that public "wear[iness]" and to encourage

those who may be "deterred from partaking in biometric identifier-facilitated

transactions," the legislature enacted BIPA's additional regulations. *Id.* 14/5(d)-(e),

(g). Thus, BIPA was not intended to stop all use of biometric technology; instead, it

set a standard for the safe collection, use, and storage of biometrics, including

protecting against the public's main fear that their biometric data would be widely

disseminated. Section 15(c) achieves that goal by prohibiting a market in the transfer

of biometric data, whether through a direct exchange—sale, lease or trade—or some

other transaction where the product is comprised of biometric data.

534 F. Supp. 3d at 1307. In short, "BIPA was designed to 'regulate and promote, not inhibit,' the

use of biometric technology." *Id.* (quoting *Vigil v. Take-Two Interactive Software, Inc.*, 235 F.

Supp. 3d 499, 512 n.9 (S.D.N.Y. 2017)).

Plaintiffs' attacks on the *Microsoft II* decision are also unpersuasive. They claim that

*Microsoft II* overlooked the emphasis on regulation in 740 ILCS 14/5(g). *See* Opp'n at 14–15.

Not so—that very subsection is specifically cited and analyzed in the above excerpt. Plaintiffs

also claim that *Microsoft* overlooked the fact that Section 15(c) is limited in "scope to private

entities." Opp'n at 14. But *all* of BIPA's requirements specify what a "private entity" must or

must not do. *See* 740 ILCS 14/15(a)–(e) (each regarding a "private entity"). The use of the same

word in Section 15(c) as in the rest of BIPA is an incredibly thin reed on which to lean Plaintiffs'

argument that *any* for-profit use of Biometric Data is banned by BIPA—a law that opens by

noting the "growing" use of biometrics "in the *business* and security screening sectors." 740 ILCS

14/5(a) (emphasis added).

Finally, Plaintiffs point to the decisions in *Warmack-Stillwell v. Christian Dior, Inc.*, 655

F. Supp. 3d 742 (N.D. Ill. 2023) and *In re Clearview AI, Inc., Consumer Privacy Litigation*, No.

21-CV-135, 2022 WL 252702 (N.D. Ill. Jan. 27, 2022), *motion to certify appeal denied*, 2022 WL

823855 (N.D. Ill. Mar. 18, 2022). *See* Opp'n at 13–14. But these decisions are inapposite. To

start, with respect to the plaintiffs' Section 15(c) claim, the defendant in *Warmack-Stillwell*

1   primarily argued lack of injury-in-fact under Article III. And perhaps because the court dismissed
2   the entire complaint on other grounds, the court never considered whether Section 15(c) demands
3   an exchange of Biometric Data for financial benefit. *See* 655 F. Supp. 3d at 746 (dismissing based
4   on BIPA's general health care exemption). Still, the court's earlier discussion of Section 15(c)
5   suggests that it would have rejected the blanket no-profiting theory that Plaintiffs press here. *See*
6   *id.* at 745 (recognizing that Section 15(c) commands that "no one may profit *in the specified ways*
7   from another person's biometric identifiers or information" (quoting *Thornley*, 984 F.3d at 1246–
8   47) (emphasis added)).

9       Likewise, the *In re Clearview AI* court primarily considered a challenge to the plaintiffs'
10  Section 15(c) claim on Article III grounds. *See* 2022 WL 252702, at *3. And while the defendant
11  also raised a Rule 12(b)(6) challenge, the opinion analyzed only whether the plaintiffs had
12  "provide[d] sufficient factual details that Macy's profited from this information." *Id.* at *4. Once
13  again, the Court did not grapple with the consequences of the holding that Plaintiffs seek here.
14  Moreover, even if Macy's did not exchange Biometric Data for a financial benefit in that case,
15  Clearview AI did: it charged Macy's for access to a database containing the plaintiffs' Biometric
16  Data. *Id.* at *1. This exchange may well have colored the court's decision that plaintiffs' Section
17  15(c) claim against Macy's survived where Macy's used the purchased Biometric Data "to
18  prevent losses and improve customer experience." *Id.* at *3.

19      **B. Plaintiffs do not plausibly allege that Google profited from use of their
20          Biometric Data.**

21      Regardless, Plaintiffs do not allege facts to support their (defective) improvement-based
22  theory. The allegations identified in their Opposition—that various Google products incorporate
23  facial recognition technologies, and that Google devotes resources to research such technologies,
24  *see* Opp'n at 12—in no way suggest that Google specifically used the DiF Dataset in a way that
25  improved its products, many of which are offered for free, in a way that resulted in increased
26  profits. Plaintiffs' allegations certainly do not make it plausible to infer that Google used *their*
27  Biometric Data in this way. Plaintiffs' Section 15(c) claim should, therefore, be dismissed for the
28

1   additional reason that Plaintiffs' factual allegations do not "nudge[] their claims across the line

2   from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III. Plaintiffs' unjust enrichment claim fails for failing to identify applicable law and for the same reasons as their BIPA claims.

This Court has been clear: when a plaintiff brings a common law claim, they *must*

"identify the applicable law." *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No.

16-CV-06391-BLF, 2018 WL 1576457, at *4 (N.D. Cal. Mar. 30, 2018) (Freeman, J.). Google

need not identify a specific conflict between the laws of Illinois and California, just as the

defendants were not required to do so in *Samsung*. *See id.* (dismissing based on general tendency

for "variances among state laws" and not based on claim-specific variances). Plaintiffs' unjust

enrichment claim should, therefore, be dismissed based on their failure to specify whether they

are bringing their unjust enrichment claim under Illinois or California law.

Plaintiffs clarify in their Opposition that they are bringing their unjust enrichment claim

under Illinois law. *See* Opp'n at 17–18. But under Illinois law, Plaintiffs' unjust enrichment claim

fails for the same reason as their BIPA claims because Google's alleged BIPA violations are the

same purported misconduct underlying both claims. Under Illinois law, "if an unjust enrichment

claim rests on the same improper conduct alleged in another claim, then the unjust enrichment

claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with

the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

Plaintiffs respond that their claims survive because "unjust enrichment is a standalone

claim under Illinois." *See* Opp'n at 17–18 (citing *O'Malley as Tr. Under Tr. Agreement Dated

Jan. 1, 2006 v. Adams as Tr. of Almyra M. Prather Revocable Tr. Agreement Dated Dec. 15,

1967*, 2023 IL App (5th) 210381, ¶¶ 51–53). The Seventh Circuit in *Cleary* recognized that recent

Illinois unjust enrichment law contains "apparently conflicting language" on whether an unjust

enrichment claim can "stand untethered from an underlying claim." 656 F.3d at 516–17. But the

court offers a way to "make sense of it," explaining that "[u]njust enrichment is a common-law

theory of recovery or restitution that arises when the defendant is retaining a benefit to the

plaintiff's detriment, and this retention is unjust. What makes the retention of the benefit unjust is

9

often due to some improper conduct by the defendant. And *usually this improper conduct will form the basis of another claim against the defendant in tort, contract, or statute.*" *Id.* at 517 (emphasis added). This case is a "usual" one: Plaintiffs claim that Google engaged in improper conduct vis-à-vis its purported BIPA violations. And so, even if an unjust enrichment *might* be "standalone" in some cases, as in the *O'Malley* case cited by Plaintiffs, which involved a quasi-contract theory of restitution, 2023 IL App (5th) 210381, ¶¶ 51–53, Plaintiffs' unjust enrichment theory *here* is tied to their BIPA claim. Thus, as in the usual case, Plaintiffs' unjust enrichment claim fails for the same reasons as their BIPA claims.

## IV.  Plaintiffs' claim for injunctive relief should be dismissed because injunctive relief is a remedy, not a cause of action.

Plaintiffs do not dispute, and therefore concede, that their claim for injunctive relief should be dismissed as a remedy, not a cause of action. *See Microsoft I*, 525 F. Supp. 3d at 1300 ("Injunctive relief is a remedy, not a cause of action. Plaintiffs do not argue otherwise.") (cleaned up); *Amazon I*, 525 F. Supp. 3d at 1316 (same); *see also Angeles*, 2013 WL 622032, at *4 ("The failure to respond amounts to a concession."); *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived."), *aff'd*, 646 F.3d 1240 (9th Cir. 2011).

## V.  Dismissal should be with prejudice.

The Court has already given Plaintiffs an opportunity to amend their Complaint. *See* Dkt. 66 (Court order granting motion to stay and denying motion to dismiss as moot because "It appears likely that . . . Plaintiffs will choose to amend the Complaint in this action"); Dkt. 88 (not seeking leave to amend and instead seeking a deadline for Google to move to dismiss original complaint). Plaintiffs' decision to stand on their Complaint as originally written proves that there are no additional facts that they can allege in good faith to support their claims. And Plaintiffs' request for discovery in order to amend their Complaint is simply backwards: Plaintiffs must *first* state a plausible claim before they may "unlock the doors of discovery" against Google or any other defendant. *Iqbal*, 556 U.S. at 678–79.

1    Finally, though Plaintiffs say that they could add allegations "regarding Defendant's

2  offices and employees in Chicago and the broad nature of the work performed there," Opp'n at

3  19, such allegations would not cure the extraterritoriality issue barring their claims for the reasons

4  already discussed above. If simply identifying an Illinois office were enough, then Plaintiffs could

5  demand discovery from any company with a national footprint armed with nothing but a

6  threadbare complaint. *See, e.g.*, *Avery*, 216 Ill. 2d at 187 (dismissing even where defendant had

7  Illinois headquarters); *Shaw*, 2005 WL 3088438, at *2 (same).

8                              **CONCLUSION**

9    Google respectfully asks that the Court dismiss Plaintiffs' complaint with prejudice.

10

11
                                                 **PERKINS COIE LLP**
12  Dated:  December 21, 2023

13

14                                      By:_/s/ Anna Mouw Thompson_

15                                          Bobbie J. Wilson, Bar No. 148317
                                            Sunita Bali, Bar No. 274108
16                                          Susan D. Fahringer, Bar No. 162978
                                            Lauren J. Tsuji, Bar No. 300155
17                                          Anna Mouw Thompson (*pro hac vice*)

18                                          Attorneys for Defendant
                                            GOOGLE LLC
19

20

21

22

23

24

25

26

27

28