1

2

3           **UNITED STATES DISTRICT COURT**

4           **NORTHERN DISTRICT OF CALIFORNIA**

5           **SAN JOSE DIVISION**

6

7    STEVEN VANCE, et al.,                    Case No. 20-cv-04696-BLF

8                    Plaintiffs,

9           v.                                **ORDER GRANTING IN PART AND
                                              DENYING IN PART MOTION TO
10   GOOGLE LLC,                              DISMISS**

11                   Defendant.               [Re: ECF No. 108]

12

13           Before the Court is Defendant Google LLC's ("Defendant") Motion to Dismiss Amended

14   Complaint. ECF 108. Plaintiffs Steven Vance and Tim Janecyk, individually and on behalf of others

15   similarly situated (collectively, "Plaintiffs"), oppose Defendant's motion. ECF 111. The Court has

16   considered the motion, the relevant portions of the record, and arguments made during a hearing on

17   October 10, 2024. For the reasons described below, Defendant's Motion is GRANTED IN PART

18   AND DENIED IN PART.

19

20   **I.    BACKGROUND**

21           **A. Procedural History**

22           Plaintiffs filed their initial complaint on July 14, 2020. ECF 1. The case was stayed pending

23   the resolution of Plaintiffs' related suit against International Business Machines Corporation

24   ("IBM"), *Vance v. IBM*, No. 1:20-cv-00577 (N.D. Ill). ECF 33, 36. The Court lifted the stay on

25   August 28, 2023. ECF 89. On October 12, 2023, Defendant moved to dismiss the initial complaint.

26   ECF 92. On March 15, 2024, the Court granted Defendant's motion and dismissed Plaintiffs' BIPA

27

28   claims without prejudice, unjust enrichment claim without prejudice, and injunctive relief claim

United States District Court
Northern District of California

with prejudice. *See* ECF 103, Motion to Dismiss Order. On April 15, 2024, Plaintiffs filed an amended complaint ("FAC"). ECF 104. On May 31, 2024, Defendant filed the instant motion to dismiss Plaintiffs' amended complaint. ECF 108.

### B. Factual Allegations

The Court discussed the factual and procedural backgrounds of this case in its previous Order on Defendant's Motion to Dismiss Complaint. ECF 103. Thus, the Court only summarizes here the facts most relevant to the present motion.

Plaintiffs Steven Vance and Tim Janecyk, both Illinois residents, publicly posted photographs containing their faces to Flickr, an online photo management and sharing website. ECF 104, ¶¶ 29-30, 69-74, 82-88. In or about 2014, Flickr compiled approximately 100 million Flickr photographs into a single dataset (the "Flickr Dataset") and made the dataset publicly available. *Id.*, ¶ 29. The Flickr Dataset contained those photographs uploaded by lead Plaintiffs and facial images of other Illinois citizens and residents. *Id.*, ¶ 31. The Flickr Dataset also contained substantial information about each photo and its uploader, including unique identifiers, user details, and location data, without the uploader's knowledge or express consent. *Id.*, ¶¶ 30-34.

In response to research highlighting bias and deficiencies in facial recognition technology, particularly the "Gender Shades" study released in 2018, IBM created the Diversity in Faces Dataset ("DiF Dataset") in 2019. *Id.*, ¶¶ 35-42. The DiF Dataset, consisting of one million images from the Flickr Dataset, was designed to improve facial recognition systems' accuracy across diverse populations. *Id.*, ¶¶ 45-48. Without permission from lead Plaintiffs or other class members, IBM scanned the facial geometry of each image contained in the DiF Dataset, extracted biometric identifiers and information from those images, including craniofacial features and facial landmark points, and made the DiF Dataset available to other for-profit companies developing facial recognition technologies. *Id.*, ¶¶ 43-53; 75-76; 89-93.

Defendant, which used facial recognition technology in various products such as Google

Pixel smartphones and Google Photos software applications, obtained the DiF Dataset from IBM. *Id.*, ¶¶ 54-56, 59-60. Defendant aimed to improve the fairness and accuracy of its facial recognition products using the DiF Dataset, particularly for the facial unlock features of the Pixel smartphones. *Id.*, ¶¶ 58-65.

Plaintiffs allege Defendant has maintained a presence in Illinois since 2000. *Id.*, ¶ 66. By 2015, Google had established a large office complex housing 600 employees across 372,000 square feet. *Id.* By 2019, Google's presence in Chicago expanded further as it obtained a second office in Chicago with a 132,000-square-foot space and increased its total headcount in Chicago to about 1,200 employees. *Id.* Defendant's Chicago office employed engineers and technical staff and focused on engineering products, including the Pixel smartphone *Id.*, ¶¶ 67-68. The engineering team sought to improve the Pixel smartphones' face unlock technology using diverse data, which aligned with the content of the DiF Dataset. *Id.*, ¶ 68.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

## III.    DISCUSSION

### A.  BIPA Claims

The Illinois Biometric Information Privacy Act ("BIPA") regulates the use of an individual's biometric data. *See* 740 ILCS § 14/1, *et seq.* Under Illinois law, "biometric identifiers" include a "scan of . . . face geometry," and "biometric information" is "any information . . . based on an individual's biometric identifier used to identify an individual." *Id.* § 14/10. Two BIPA provisions are at issue in this case: (1) no private entity may "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" without providing written notice and obtaining a written release, *id.* § 14/15(b) ("Section 15(b)"); and (2) no private entity "in possession of a biometric identifier or biometric information may sell, lease, trade, or ***otherwise profit from*** a person's or a customer's biometric identifier or biometric information," *id.* § 14/15(c) ("Section 15(c)") (emphasis added). BIPA provides for a private right of action and allows a prevailing party to recover liquidated damages in the amount of: (1) $1,000 or actual damages, whichever is greater, for negligent violations and (2) $5,000 or actual damages, whichever is greater, for intentional or reckless violations. *Id.* § 14/20. BIPA also allows for the recovery of attorneys' fees and costs and injunctive relief. *Id.*

The Plaintiffs bring two claims under BIPA. First, Plaintiffs allege Defendant violated Section 15(b) because Google collected Plaintiffs' biometric information "without providing the requisite written information and without obtaining the requisite written releases." ECF 104, ¶¶ 113-

United States District Court
Northern District of California

119. Second, Plaintiffs allege Defendant violated Section 15(c) because it "profited from" Plaintiffs' biometric information. *Id.*, ¶¶ 127-136. Google challenges both BIPA claims on two grounds. First, Google argues that both BIPA claims fail because the FAC still fails to allege the violations "occur[ed] primarily and substantially in Illinois." ECF 108 at 8. Second, Google argues that Plaintiffs' claim under Section 15(c) fails because Plaintiffs have still failed to plead Google "otherwise profit[ed] from" Plaintiffs' biometric information. ECF 108 at 10-15. The Court addresses the arguments in turn.

### 1. Extraterritoriality

Under Illinois law, a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005) (internal quotation marks omitted). BIPA does not contain an express provision stating it is intended to apply extraterritorially. *See Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017). Therefore, BIPA violations must occur in Illinois for plaintiffs to obtain any relief. *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017) ("[The plaintiffs'] asserted violations of [BIPA] must have taken place in Illinois in order for them to win."). The applicable test is whether the circumstances "occur[ed] primarily and substantially in Illinois." *Avery*, 835 N.E.2d at 854; *see also Rivera*, 238 F. Supp. 3d at 1101. There is "no single formula or bright-line test for determining whether a transaction occurs within [Illinois]." *Avery*, 835 N.E.2d at 854. Rather, "each case must be decided on its own fact." *Id.*

Defendant contends that Plaintiffs still attempt to apply BIPA extraterritorially and have still failed to plead facts that the alleged violation occurred primarily and substantially in Illinois. ECF 108 at 8-10. Specifically, Defendant argues that Plaintiffs have failed to allege that Defendant obtained the DiF Dataset in Illinois or that Defendant profited from Plaintiffs' Biometric Data in Illinois. ECF 108 at 9-10.

In response, Plaintiffs argue that they have adequately pled the alleged BIPA violations

"primarily and substantially" occurred in Illinois. ECF 111 at 8-10. Specifically, Plaintiffs argue that the facts in the FAC and the inferences therefrom establish that Defendant obtained Plaintiffs' Biometrics and profited from using the Biometrics by improving Defendant's Pixel Smartphones in Chicago. ECF 111 at 8-9.

In the FAC, Plaintiffs allege that 1) the Pixel Smartphones were engineered by Defendant's engineering team in Chicago, ECF 104, ¶¶ 55-58, 66-68; 2) there were problems with the facial unlock feature of the Pixel smartphones and Google's effort to solve the problem using its collected face scans failed, *id.*, ¶¶ 56-58, 62; and 3) Google obtained the DiF Dataset from IBM and used the DiF Dataset to improve its facial recognition products and technologies, including Pixel Smartphones, *id.*, ¶¶ 59-65. Further, Plaintiffs allege that the DiF Dataset obtained by Defendant included photographs of Plaintiffs, who were Illinois residents, and significant information about those photographs. ECF 104, ¶¶ 46, 53, 60, 69-80, 82-94, 103.

The Court finds Plaintiffs have pled sufficient facts from which a reasonable inference could be drawn that the alleged BIPA violations occurred "primarily and substantially" in Illinois. While Defendant correctly points out that Plaintiffs do not allege where Defendant obtained or "otherwise profited" from the DiF Dataset (ECF 108 at 9-10), the Court finds that those facts alone "would not necessarily be dispositive." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1102 (N.D. Ill. 2017) (finding plaintiffs' failure to allege a location for the actual BIPA violation did not prevent plaintiffs' BIPA accusations to survive the motion to dismiss); *see also Vance v. Amazon.com Inc. ("Amazon I")*, 525 F. Supp. 3d 1301, 1308-09 (W.D. Wash. 2021) (denying the motion to dismiss based on an extraterritoriality challenge and finding discovery appropriate); *Vance v. Microsoft Corp. ("Microsoft I")*, 525 F. Supp. 3d 1287, 1293-94 (W.D. Wash. 2021) (same). As the court in *Amazon I* and *Microsoft I* explained, while it is possible that facts discovered during discovery will reveal that the alleged BIPA violations did not occur primarily in Illinois, the Court finds that "more information is needed to reach any determination" and Plaintiffs have pled sufficient facts to survive

United States District Court
Northern District of California

Defendant's challenge at the motion to dismiss stage that the alleged BIPA violations did not occur in Illinois. *See Amazon I*, 525 F. Supp. 3d at 1308-09;  *Microsoft I*, 525 F. Supp. 3d at 1293. The Court notes that Defendant's reliance on cases at the summary judgment stage is misplaced because in those cases, after the discovery was completed, the records proved the alleged BIPA violation did not occur in Illinois. ECF 108 at 10 (citing *Vance v. Amazon.com, Inc. ("Amazon III")*, 2022 WL 12306231, at *8 (W.D. Wash. Oct. 17, 2022) and *Vance v. Microsoft Corp. ("Microsoft III")*, 2022 WL 9983979, at *8 (W.D. Wash. Oct. 17, 2022)).

In its motion to dismiss, Defendant relies on *McGoveran* and argues its Rule 12(b)(6) motion should be similarly dismissed because Plaintiffs have failed to plead "direct interaction" between themselves and Defendant or the "case's connections to Illinois." ECF 108 at 10 (citing *McGoveran v. Amazon Web Servs., Inc.*, No. CV 20-1399-LPS, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021)). The Court finds *McGoveran* distinguishable. In *McGoveran*, the case's sole connection with Illinois was plaintiffs' Illinois residency. *McGoveran*, 2021 WL 4502089, at *4. Defendant Amazon's data centers, where the alleged BIPA violations occurred, were located in Virginia, Ohio, California, and Oregon, but not Illinois. *McGoveran*, 2021 WL 4502089, at *4.  Unlike *McGoveran*, here, Defendant does not dispute that it has "two Chicago offices with employees who work on Pixel smartphones," and thus the alleged BIPA violations are plausible. ECF 10.

For the above reasons, the Court finds that Plaintiffs have pled enough facts from which reasonable inferences can be drawn to establish a plausible BIPA violation that occurred "primarily and substantially" in Illinois. *Avery*, 835 N.E.2d at 854; *Rivera*, 238 F. Supp. 3d at 1101. Thus, the Court DENIES Defendant's motion to dismiss Plaintiffs' BIPA claims based on extraterritoriality.

### 2.  Profit under Section 15(c)

Defendant separately moves to dismiss Plaintiff's claim No. 2, brought under Section 15(c) of BIPA. ECF 108 at 10-15. Defendant argues that Plaintiffs have failed to allege that Defendant exchanged their biometric information for a financial benefit or that their biometric information was

used to improve Defendant's products for profit. *See id.* In response, Plaintiffs argue that they have adequately alleged that Defendant "otherwise profited from" their biometric information in the FAC. ECF 111 at 12-17.

### a. Interpretation of Section 15(c)'s "otherwise profit from"

Section 15(c) of BIPA states that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS § 14/15(c). As an initial matter, the parties dispute the scope of "otherwise profit from" language in Section 15(c).

Defendant argues that Section 15(c) only prohibits "financial benefit" resulting from "an exchange," such as "profits from a sale, lease of trade." ECF 108 at 11. Defendant argues that, by applying the canon of *ejusdem generis* for statutory interpretation, the term "otherwise profit" must be "interpreted as limited in the same way as" its three predecessors—"sell, lease, [and] trade." ECF 108 at 11 (citing *Vance v. Microsoft Corp. ("Microsoft II")*, 534 F. Supp. 3d 1301, 1306 (W.D. Wash. 2021)); 740 ILCS 14/15(c). According to Defendant, because the three predecessors all "contemplate a transaction in which an item is given or shared in exchange for something of value," the term "otherwise profit" should be limited similarly to "a financial benefit." ECF 108 at 11 (citing *Vance v. Microsoft Corp. ("Microsoft II")*, 534 F. Supp. 3d 1301, 1306 (W.D. Wash. 2021)).

Plaintiffs argue that Section 15(c) prohibits "private entities using unlawfully obtained Biometrics to improve their commercial products in order to make them more desirable and profitable in the marketplace." ECF 111 at 12-13 (citing *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1206-07 (Ill. 2019)). To support their position, Plaintiffs argue that the Illinois Supreme Court in *Rosenbach* noted that BIPA imposed a "two-pronged 'strategy'" to eliminate problems with the collection and use of biometrics information: 1) imposing safeguards to protect customers' privacy rights, and 2) imposing "substantial potential liability" on private entities for BIPA violations. ECF 111 at 12 (citing *Rosenbach*, 129 N.E.3d at 1206–07). Plaintiffs further rely

8

on *Thornley* where the Seventh Circuit highlighted the incentive of Section 15(c) to make "collect or hold" biometric data "not profitable." ECF 111 at 13 (citing *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021)).

Interpretation of the term "otherwise profit" in Section 15(c) was fully analyzed by the court in *Microsoft II*, 534 F. Supp. 3d at 1305-09. As the court in *Microsoft II* explained, while the term "profit" may have a broader "ordinary meaning" than its three predecessors, the term should not be given its "full and ordinary meaning" because doing so would render the term "superfluous." *Microsoft II*, 534 F. Supp. 3d at 1306 (citing *Pooh-Bah Enters., Inc. v. Cnty. of Cook*, 905 N.E.2d 781, 799 (2009)). Accordingly, the court in *Microsoft II* applied the statutory interpretation canon of *ejusdem generis* and found the term "otherwise profit" in Section 15(c) "encompasses commercial transactions—such as a sale, lease or trade—during which the biometric data is transferred or shared in return for some benefit." *Microsoft II*, 534 F. Supp. 3d at 1306.

The Court finds persuasive and adopts the interpretation of the term "otherwise profit" provided by *Microsoft II*. The Court finds this interpretation is supported by the statute itself and by BIPA's legislative intent—setting a standard for the "safe collection, use and storage of biometrics" among private entities and to prevent and deter marketing biometric data. *Microsoft II*, 534 F. Supp. 3d 1307-08; *see also Vance v. Amazon.com Inc. ("Amazon II")*, 534 F. Supp. 3d 1314, 1323 (W.D. Wash. 2021) (rejecting a broad interpretation of Section 15(c) because it "would prohibit the sale of any product containing biometric technology because any such feature had to be developed or built with biometric data"). The Court disagrees with Plaintiffs that either *Rosenbach* or *Thornley* supports their broader interpretation of "otherwise profit." In *Rosenbach*, the Illinois Supreme Court did not discuss the proper interpretation of Section 15(c). *See Rosenbach*, 129 N.E.3d at 1206-07. In *Thornley*, the Seventh Circuit found Section 15(c) "flatly prohibits" certain for-profit transactions involving biometric data made by "the collector or holder of the biometric data." *Thornley*, 984 F.3d at 1247. Nonetheless, nowhere in *Thornley* did the Seventh Circuit hold that Section 15(c) widely

9

prohibits "private entities" from using biometrics "to improve their commercial products," as suggested by the Plaintiffs. *See id.*; ECF 111 at 13. Thus, the Court agrees with other district courts that Section 15(c) "regulates transactions with two components: (1) access to biometric data is shared or given to another; and (2) in return for that access, the entity receives something of value." *See, e.g., Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146, 1159 (N.D. Cal. 2024); *Amazon II*, 534 F. Supp. 3d at 1322; *Microsoft II*, 534 F. Supp. 3d 1307.

**b. Plaintiffs have failed to adequately plead that Defendant violated Section 15(c).**

Defendant contends that, under the correct interpretation of the term "otherwise profit", Plaintiffs have failed to adequately plead their Section 15(c) claim because they do not allege that "Defendant exchanged or disclosed their Biometric Data to any third party for a financial benefit" or that it can be inferred from Plaintiffs' allegations that "their Biometric Data was used to improve Google's products for profit." ECF 108 at 10-15. In their opposition, Plaintiffs argue that their allegations and the reasonable inferences therefrom establish that Defendant improved its products and technologies and "ultimately profited." ECF 111 at 14-17.

In the FAC, Plaintiffs plead: 1) Defendant acknowledged defects on the face unlock feature of its Pixel smartphone, ECF 104, ¶¶ 54-56; 2) Defendant collected face scans on its own, but the face scans it collected were insufficient "to improve its algorithms and thereby improve the Pixel [smartphones'] accuracy," *id.*, ¶¶ 57-58; 3) Defendant applied for and gained access to the DiF Dataset from IBM, *id.*, ¶¶ 59-61; 4) Defendant was able to "improve the fairness and accuracy of its facial recognition products and technologies," including its Pixel smartphones, *id.*, ¶¶ 61-62; and 5) Defendant "profited from the biometric identifiers and information allowed Google to improve its facial recognition products and technologies," *id.*, ¶ 63.

The Court finds that Plaintiffs have failed to allege facts to demonstrate that Defendant "otherwise profited" from their biometric data as prohibited by Section 15(c). At best, Plaintiffs

allege a theory that Defendant "improve[d] the effectiveness of its facial recognition products" using the DiF Dataset and that Defendant profited from those improvements as "those products and technologies [became] more valuable in the commercial marketplace." ECF 104, ¶ 63, 65. The Court notes that the court in *Microsoft II* rejected similar allegations that "Microsoft used the biometric data to 'improve its facial recognition products and technologies,' which 'improve[d] the effectiveness' of those products and made them 'more valuable in the commercial marketplace.'" *Microsoft II*, 534 F. Supp. 3d at 1309 (alternation in original). The *Microsoft II* court explained that those allegations were insufficient to "establish that Microsoft disseminated or shared access to biometric data through its products." *See id.* Similarly here, while Plaintiffs' alleged facts may establish that Defendant received some benefit from using the DiF Dataset, Plaintiffs have failed to plead any facts plausibly showing that Defendant profited from their biometric data in a manner prohibited by Section 15(c). *See id.* Indeed, Plaintiffs have failed to allege *how* Defendant used the DiF Dataset if at all in the Pixel smartphone. ECF 104, ¶¶ 59-61; *see Delgado*, 718 F. Supp. 3d at 1160.

The Court also finds the cases cited by Plaintiffs in support of their Section 15(c) claim are distinguishable. ECF 111 at 15. In *Warmack-Stillwell v. Christian Dior, Inc.*, the plaintiff alleged in the complaint that Dior used her biometric data to allow her "to see how [Dior's] sunglasses would look . . . as if she were trying the glasses on in a brick-and-mortar store." 655 F. Supp. 3d 742, 744 (N.D. Ill. 2023). The Northern District of Illinois there found the plaintiff had sufficiently pled her claim under Section 15(c) because Dior used her unique biometric identifiers and biometric information "to improve the customers' experience on Dior's website" and profited from the use as the sales of its eyewear increased. *Id.* at 745. Similarly, in *In re Clearview*, the plaintiffs alleged that, for loss prevention purposes, Defendant Macy's sought to identify people whose images appeared in surveillance camera footage by comparing the images with biometrics contained in a database. *In re Clearview AI, Inc., Consumer Priv. Litig.*, No. 21-CV-135, 2022 WL 252702, at *1

United States District Court
Northern District of California

(N.D. Ill. Jan. 27, 2022), *motion to certify appeal denied sub nom. In re Clearview AI, Inc. Consumer Priv. Litig.*, No. 21-CV-0135, 2022 WL 823855 (N.D. Ill. Mar. 18, 2022). The Northern District of Illinois found plaintiffs there adequately pled their claim under Section 15(c) because it was "reasonable to infer that plaintiffs' biometric information was necessary to Macy's loss prevention business model." *Id.*, 2022 WL 252702, at *4. Here, Plaintiffs have not pled any facts similar to those found in the cases they cite, such as Defendant "disseminated or shared access to biometric data through its products." *Microsoft II*, 534 F. Supp. 3d at 1309; *see Christian Dior*, 655 F. Supp. 3d at 744; *In re Clearview*, 2022 WL 252702, at *4; ECF 104, ¶¶ 61-64.

Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiffs' claim for violation of § 14/15(c) of the Illinois Biometric Privacy Act WITHOUT LEAVE TO AMEND.

### B. Unjust Enrichment

Defendant next challenges Plaintiffs' unjust enrichment claim as insufficiently pled under Illinois law because Plaintiffs have an adequate remedy at law, and Plaintiffs have not plausibly alleged that they suffered any detriment or Google received a financial benefit. ECF 108 at 16-17. Plaintiffs respond that they have adequately pled their unjust enrichment claim under Illinois law. ECF 111 at 20-23.

As an initial matter, Defendant contends that, because Plaintiffs' claims under BIPA fail, Plaintiffs' unjust enrichment claim under Illinois law necessarily fails because the unjust enrichment claim is tied to BIPA claims. ECF 108 at 15; ECF 108 at 10-11. Under Illinois law, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). As explained above, the Court finds Plaintiffs have plausibly pled their claim for violation of § 14/15(b) of the Illinois Biometric Privacy Act. Thus, the Court rejects Defendant's argument on the basis that Plaintiffs have failed to plead any "unjust conduct" by Google. ECF 108 at 15-16.

Defendant next contends that Plaintiffs have failed to plead facts supporting the elements of unjust enrichment. To plead a claim of unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary*, 656 F.3d at 516 (internal quotation omitted). Here, the Court finds that Plaintiffs have adequately pled an unjust enrichment claim under Illinois law. With respect to "unjustly retained a benefit," Plaintiffs allege that Google obtained the DiF Dataset from IBM "in order to improve the fairness and accuracy of its facial recognition products and technologies," and profited[1] from such improvements. ECF 104, ¶¶ 59-65. With respect to "detriment," Plaintiffs allege that they have sustained and will continue to suffer injuries because "Google exposed [them] to ongoing privacy risks," "deprive[d] [them] of their statutorily-protected privacy rights," and caused them to be more "likely to withdraw from biometric-facilitated transactions and other facially-mediated electronic participation." *Id.*, ¶¶ 96-102. Indeed, as discussed above, the Court finds Plaintiffs have alleged facts from which a reasonable inference could be drawn that Google's conduct violated BIPA. Thus, the Court finds Plaintiffs have pled the elements of unjust enrichment. *See Vance v. Int'l Bus. Machines Corp.*, No. 20-C-577, 2020 WL 5530134, at *5 (N.D. Ill. Sept. 15, 2020) (finding plaintiffs have sufficiently pleaded the elements of unjust enrichment based on similar facts).

Lastly, Defendant contends that Plaintiffs have failed to plead that they lack an adequate remedy at law. ECF 108 at 17. Under Illinois law, unjust enrichment is an equitable claim. *See Hess v. Kanoski & Y Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012). The Ninth Circuit has held that plaintiffs seeking equitable relief in a federal court must establish that they lack an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also Philips v.*

---

[1] In context of the unjust enrichment claim, the Court considers "profit" in its generic sense, not limited by Section 15(c).

*Ford Motor Co.*, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) (*citing Knox v. Phoenix Leasing, Inc.*, 29 Cal. App. 4th 1357, 1368 (1994)) ("A plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available."); *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) ("[E]quitable relief is not appropriate where an adequate remedy exists at law.").

The Court finds Plaintiffs have failed to establish they lack an adequate remedy at law as to their claims for restitution or disgorgement. In the FAC, Plaintiffs conclusively plead that "Plaintiffs and Class Members have no adequate remedy at law." ECF 104, ¶ 133. But Plaintiffs fail to allege any specific facts showing that the restitution or disgorgement they seek would exceed the legal remedies available to them under BIPA. *See Sonner*, 971 F.3d at 844; *see also Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021) (dismissing the plaintiff's claims for restitution and disgorgement because she failed to allege any specific facts showing legal damages are necessarily inadequate).

Nonetheless, the Court finds Plaintiffs are not barred from seeking equitable relief in the form of an injunction under Illinois unjust enrichment law to the extent their claims are based on alleged future harm. *See Sonner*, 917 F.3d at 842 ("Injunctive relief is not at issue."); *Nacarino*, 2021 WL 3487117, at *12 (explaining *Sonner* does not bar injunctive relief where plaintiff alleges future harms). Here, in the FAC, Plaintiffs allege Defendant "should not be permitted to retain" the biometric identifiers and information that it "unlawfully obtained." ECF 104, ¶ 135. Thus, the Court finds Plaintiffs have sufficiently pled the likelihood of future harm for which they have no adequate remedy at law. *See Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1194 (S.D. Cal. 2023).

For the reasons above, the Court GRANTS Defendant's motion to dismiss Plaintiffs' claim for unjust enrichment to the extent it is seeking equitable relief in the form of restitution and disgorgement WITHOUT LEAVE TO AMEND and DENIES Defendant's motion to dismiss Plaintiffs' claim for unjust enrichment to the extent it is seeking equitable relief in the form of an

injunction. *See, e.g., Grausz*, 691 F. Supp. 3d at 1194 (S.D. Cal. 2023) (granting motion to dismiss for claims seeking equitable relief in the form of restitution and denying motion to dismiss for claims seeking equitable relief in the form of injunctive relief).

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Defendant's motion to dismiss Plaintiffs' first claim for violation of § 14/15(b) of the Illinois Biometric Privacy Act is DENIED;

2.  Defendant's motion to dismiss Plaintiffs' second claim for violation of § 14/15(c) of the Illinois Biometric Privacy Act is GRANTED WITHOUT LEAVE TO AMEND; and

3.  Defendant's motion to dismiss Plaintiffs' third claim for unjust enrichment under Illinois law is DENIED to the extent it is seeking injunctive relief and GRANTED WITHOUT LEAVE TO AMEND to the extent it is seeking restitution and disgorgement.

Dated:  December 5, 2024

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

15